735 So.2d 1064 (1999)
Leesa Crim ALLRED, Appellant,
v.
Judson Moore ALLRED, III, Appellee.
No. 97-CA-01171-COA.
Court of Appeals of Mississippi.
March 23, 1999.
*1065 Mark A. Chinn, Jackson, Attorney for Appellant.
Judson Moore Allred, III, Appellee, pro se.
BEFORE McMILLIN, P.J., DIAZ, AND KING, JJ.
McMILLIN, P.J., for the Court:
¶ 1. Leesa Crim Allred had appealed a ruling of the chancellor finding her to be in wilful contempt for her failure to abide by the terms of the judgment of divorce from her former husband, Judson Moore Allred, III, regarding Mr. Allred's visitation rights with the children of the parties. She also claims that the chancellor abused his discretion by finding Mr. Allred to be in contempt as to certain other provisions of the divorce judgment relating to finance and property but in failing to use the coercive powers available to him to force Mr. Allred to comply with the judgment. We conclude that Mrs. Allred is correct on both scores and we, therefore, reverse and render in part and reverse and remand in part.

*1066 I.

Facts
¶ 2. Mrs. Allred was granted a divorce on the ground of Mr. Allred's uncondoned adultery in November 1994. Rather than actively contest matters relating to division of property, claims for spousal support, child custody, and child support, the parties amicably resolved these issues in a written agreement submitted to the chancellor. The chancellor approved the terms of the agreement and incorporated it by reference into the judgment, thereby vesting the terms of the agreement with the force of a court order. Under the agreement, Mrs. Allred was awarded primary custody of the two minor children of the parties. The agreement defined Mr. Allred's visitation in the following terms:
HUSBAND shall have visitation with the children in accordance with guidelines and schedules established by Dr. Gerald O'Brien who is the children's psychologist. HUSBAND shall meet with Dr. O'Brien at HUSBAND'S expense for this purpose prior to exercising any visitation. All guidelines and schedules recommended by Dr. O'Brien shall be first submitted to WIFE by Dr. O'Brien for approval, which shall not be unreasonably withheld by WIFE. Dr. O'Brien shall be the judge of reasonableness of WIFE'S objections.
¶ 3. One year after the divorce judgment, Mr. Allred filed a motion to have Mrs. Allred cited for contempt in that she had "failed and refused to allow the minor children to visit with [him] thereby denying him his visitation rights as awarded by the Court...." Additionally, Mr. Allred requested that the judgment be amended to establish a fixed visitation schedule for the future.
¶ 4. Mrs. Allred, in response, filed a countering motion that asked the chancellor to cite Mr. Allred for contempt for, among other things, (a) his failure to pay certain monetary obligations placed on him in the divorce judgment totaling $17,109.61, (b) his failure to deliver to her "all of his interest in the Country Club of Jackson stock ... free and clear of all debt," (c) his failure to furnish Mrs. Allred the necessary documentation to permit her to have the parties' GMC Safari minivan retitled solely in her name, and (d) his failure to maintain life insurance coverage on his life for the benefit of the children as ordered in the divorce judgment.
¶ 5. The chancellor found Mrs. Allred to be in contempt in regard to visitation "by reason of her unreasonably withholding from [Mr. Allred] visitation with his children since April, 1995, in disregard of the opinion of Dr. Gerald O'Brien in December 1994 that [Mr. Allred] should be allowed certain monitored visitation with his children." The chancellor further concluded that the existing provisions relating to visitation had proven to be unworkable. As a result, the chancellor amended the visitation order to set a detailed and rigidly fixed schedule of visitation for Mr. Allred. The chancellor ruled that Mrs. Allred could purge herself of her contempt by complying in the future with the court's modified order on visitation and by paying to Mr. Allred the sum of $5,000 as partial reimbursement for his attorney's fees in prosecuting the contempt proceeding. The chancellor ordered that sum to be paid within fifteen days of entry of the judgment.
¶ 6. The chancellor also found Mr. Allred to be in contempt for his failure to pay awards of alimony and certain obligations relating to the children which totaled, in the aggregate, the sum of $3,328.06. The chancellor also found Mr. Allred to be in contempt for failing to cooperate in the retitling of the GMC Safari van, and for failing to maintain the required life insurance for the benefit of his children. However, in fashioning a means for Mr. Allred to purge himself of contempt, the chancellor, without explanation, ordered Mr. Allred to "purge himself of his contempt by the payment of the sum of $3,328.06 to Leesa within one hundred twenty (120) *1067 days of this judgment," this being the amount owed by Mr. Allred on matters unrelated to either the GMC van or the life insurance policy.
¶ 7. Mrs. Allred has appealed and filed her brief as provided in the Mississippi Rules of Appellate Procedure. The record reflects that Mr. Allred has made a pro se entry of appearance before this Court, but he has not filed a responsive brief.

II.

Appellee's Failure to File a Brief
¶ 8. There is case law authority that the failure of an appellee to file a brief is tantamount to confession of error. Price v. Price, 430 So.2d 848, 849 (Miss. 1983). Counterbalanced against that notion, however, is the proposition that a trial court's adjudication is entitled to a presumption of correctness, and that, despite an appellee's failure to argue his case, if the appellate court, after a review the record, is satisfied as to the unequivocal correctness of the trial court's ruling, both as it touches on matters of fact and law, then the appellate court is obligated to affirm the trial court's order. Ford v. City of Pascagoula, 228 Miss. 265, 271, 87 So.2d 558, 560 (1956).
¶ 9. Because, to some extent, this proceeding touches on matters relating to the welfare of minor children, this Court has determined to reach the merits of the issues in this appeal, though we proceed unaided by a brief from the appellee. We, therefore, conclude that this is an inappropriate case to apply the principle that appellee's failure to file a brief is a confession of error.

III.

Mrs. Allred's contempt
¶ 10. We have little doubt that the chancellor felt that Mrs. Allred was being unreasonable and uncooperative in the matter of permitting Mr. Allred to visit with his children. Nevertheless, it is problematic that, in this case, Mrs. Allred's perceived poor attitude and uncooperative spirit could form the basis for an adjudication of contempt for wilful disobedience of the court's order as it then existed. An adjudication of contempt is a serious matter and must, in the case of civil contempt, be proven by clear and convincing evidence. Masonite Corp. v. International Woodworkers of Am., 206 So.2d 171, 180 (Miss.1967). If the alleged contemnor is to be punished criminally, the standard rises to that applicable in a criminal prosecution, i.e., beyond a reasonable doubt. Id.
¶ 11. Because Mr. Allred sought, in this case, to sanction Mrs. Allred for her past wilful disobedience of the chancellor's order rather than to coerce her future obedience, we conclude that this was a proceeding in the nature of criminal contempt. Thus, the standard of proof to convict her of contempt was beyond a reasonable doubt.
¶ 12. It is one of the fundamental precepts of contempt proceedings that, in order to determine that an alleged contemnor's disobedience is wilful, the directive claimed to have been violated must have been clear in defining the action that is either mandated or proscribed. Switzer v. Switzer, 460 So.2d 843, 846 (Miss.1984). A person is entitled to be informed with a high degree of clarity as to exactly what her obligations are under a court order before she can be found in contempt for willfully disobeying that order. Id.
¶ 13. With that in mind, we turn to the particular facts of this case. Before Mr. Allred was entitled to any visitation with his children, it was absolutely necessary that two definite events occur and it was possible that three events would have to occur. First, Dr. O'Brien was required to establish "guidelines and schedules" for visitation. Secondly, Dr. O'Brien was required to submit these guidelines and schedules to Mrs. Allred for her approval. If Mrs. Allred approved Dr. O'Brien's proposed guidelines and schedules, then visitation *1068 would be fixed. However, if Mrs. Allred declined to approve Dr. O'Brien's suggestions, a third step would become necessary in which Dr. O'Brien would be permitted to rule on the reasonableness of Mrs. Allred's objections to his proposal.
¶ 14. The proof that Mrs. Allred violated any provision of this rather convoluted process is essentially lacking. Dr. O'Brien did not testify at the contempt hearing. There is some indication in the record that Dr. O'Brien had written a letter in December 1994 to the chancellor concerning visitation. The chancellor, in his written opinion, characterized the letter as indicating that Dr. O'Brien believed Mr. Allred "should have regular visitation with his children on a trial basis for several months." However, that letter was not made a part of the record in this case. Neither was there any direct testimony that the letter was presented to Mrs. Allred in any formal sense as the required proposal establishing "guidelines and schedules" for visitation. There is no indication that the letter even contained any expansion on what Dr. O'Brien considered to be "regular visitation"a rather vague concept, at best. Though there is evidence in the record that, after Dr. O'Brien's letter, there was some attempt at scheduling visitation, it appears that it was done on a more-or-less piecemeal basis and not in compliance with a fixed schedule recommended by Dr. O'Brien.
¶ 15. The burden of proof of Mrs. Allred's contempt rested on Mr. Allred as the movant. Prestwood v. Hambrick, 308 So.2d 82, 84 (Miss.1975). In view of the high burden of proof required to find Mrs. Allred to be in wilful contempt, we find the proof in this record woefully inadequate to support an adjudication that she was wilfully disobeying the terms of the judgment. Without firm evidence that Dr. O'Brien had submitted guidelines and schedules that fixed, with some measure of certainty, Mr. Allred's visitation schedule, we conclude that it would be impossible to find Mrs. Allred to be in contempt for failing to permit visitation.
¶ 16. Our discussion to this point should not be interpreted as an endorsement by this Court of the terms of the original judgment regarding visitation. We are substantially troubled by the concept of the chancellor delegating to any third party, no matter that person's level of expertise and competence, the authority to determine an appropriate visitation schedule and to adjudicate the reasonableness of one litigant's possible objections to the schedule. While the consultation of experts in various fields is often helpful to the chancellor in reaching an informed decision as to such important and complicated matters as child custody and visitation, the ultimate responsibility for such decisions is the non-delegable duty of the court itself. We note that the chancellor who heard the contempt proceeding was not the same chancellor who granted the divorce. This second chancellor agreed as to the unworkability of the original arrangement, which he, quite appropriately, altered substantially. We have grave doubt that, even if the earlier judgment had been followed to the letter, Mrs. Allred could have been punished for her failure to acquiesce in a visitation schedule mandated by Dr. O'Brien at any time before that schedule had been submitted to and formally approved by the chancellor. However, because we find that evidence of Mrs. Allred's contempt was demonstrably insufficient long before the issue of the underlying validity of the order itself arises, and because the validity issue has been rendered moot by the chancellor's laudatory decision to prospectively alter this portion of the judgment, we do not decide the case on this basis.
¶ 17. Because we conclude the evidence was insufficient to support an adjudication of contempt on the issue of Mrs. Allred's cooperativeness in matters of child visitation, we reverse and render that part of the chancellor's order. This necessarily causes us to reverse and render the $5,000 *1069 award of attorney's fees awarded to Mr. Allred as a sanction for Mrs. Allred's contempt.

IV.

Mr. Allred's Contempt
¶ 18. There is no dispute as to whether Mr. Allred is in contempt for his failure to cooperate with Mrs. Allred in having the GMC Safari van re-titled solely in her name and for his failure to procure and maintain a life insurance policy on his life for the benefit of the children. The chancellor made that adjudication and Mr. Allred did not perfect an appeal from those aspects of the chancellor's ruling, so they are beyond our authority to review.
¶ 19. Rather, the issue before this Court is whether, as Mrs. Allred suggests in her appeal, the chancellor's failure to employ the coercive powers available to him to compel Mr. Allred to bring himself into compliance with the court's order on these points constituted an abuse of discretion.
¶ 20. We conclude that it did. A litigant entitled to the benefit of certain court-compelled action by another party to the litigation has a right to bring the matter of non-performance to the attention of the court and invoke the coercive power of that court to enforce its lawful order. V.A. GRIFFITH, MISSISSIPPI CHANCERY PRACTICE § 664 (2d ed.1950). Having properly demonstrated her right to relief and, in fact, having had that right affirmatively vindicated by the chancellor's adjudication of contempt, Mrs. Allred has suffered a fundamental deprivation of her legal rights when she was denied any relief designed to enforce that right. The failure to enforce Mr. Allred's compliance would not be unlike a circuit judge, in a bench trial, adjudicating the plaintiff's entitlement to a money judgment on the law and facts but nevertheless declining to enter the judgment.
¶ 21. Chancellor Griffith, in his landmark work on chancery practice in Mississippi, said the following:
But aside from mere money decrees, where specific personal acts of the defendant are necessary to the enforcement of the decree, or where the performance of those acts by him would so distinctly facilitate the matter and make it so much more practical and convenient that a refusal on his part would amount to a substantial impediment to the execution of the decree he will be compelled to perform on pain of imprisonment for contempt if he refuse, or if his failure so to do become the equivalent of a contemptuous refusal.
GRIFFITH § 664.
¶ 22. The chancellor in this case offered no explanation for his failure to proceed in some manner to compel the reluctant Mr. Allred to carry out his obligations regarding the vehicle title and the life insurance policy. Absent some logical explanation for the chancellor's inaction, we conclude that Mrs. Allred was entitled, as a matter of law, to have the chancellor use those coercive powers available to him to extract Mr. Allred's compliance. We, therefore, find it necessary to reverse and remand this aspect of the case with instructions to the chancellor to employ such reasonable means as are within his inherent authority to ensure that Mr. Allred complies with the provisions of the divorce judgment relating to the transfer of title to the GMC Safari van, and his obligation to carry life insurance on himself for the benefit of the children.
¶ 23. Mrs. Allred alleged in her brief that the chancellor also held Mr. Allred in contempt for failing to carry out his obligation regarding the Jackson Country Club stock. Our review of the record informs us that this is factually inaccurate. Though Mrs. Allred presented proof on the matter of this stock, the chancellor did not mention this matter in its written opinion or in the judgment entered pursuant to his opinion. We consider the chancellor's *1070 silence on this issue as the legal equivalent of a denial of relief. Anderson v. Anderson, 692 So.2d 65, 72 (Miss.1997). Since Mrs. Allred does not raise this issue as error in her appeal, we are without authority to address the question of Mr. Allred's obligations regarding this stock.

V.

Additional Issues
¶ 24. Mrs. Allred urges that the chancellor erred in requiring her to be primarily responsible for certain professional fees relating to psychological evaluations of the children, even though he did order Mr. Allred to reimburse her for one-half of the fees. She also claims that she should be able to offset her obligation on these counseling fees against already-existing debts due her from Mr. Allred. Her argument is based on the proposition that Mr. Allred has demonstrated his unwillingness to abide by the terms of the chancellor's orders so that her chances of actually receiving reimbursement are largely illusory.
¶ 25. The chancellor apparently considered these psychological evaluations to be essential to the welfare of the children. If Mr. Allred were either unable or unwilling to advance his part of the costs in advance, the possibility would exist that the services would be delayed. If Mrs. Allred could go even further and offset her share of these prospective costs against debts already due her, the effect would be to require Mr. Allred to be primarily responsible for all the costs. Apparently, the chancellor was concerned that Mr. Allred's financial situation was such that putting primary responsibility for the payment of the costs of these services on him might result in the services not being obtained at all. In matters relating to the welfare of the children, the competing equities existing between the parents must take a back seat. It appears that this is one of those situations where Mrs. Allred's capacity to assume responsibility for the payments must, in the interest of the children's welfare, outweigh the inequity of requiring her to advance both her part and that part ultimately to be paid by Mr. Allred. In the event Mrs. Allred experiences any difficulty in obtaining reimbursement from Mr. Allred, she will have available to her the full contempt power of the chancellor to enforce that right. That this may work some hardship on her must give way to the best interest of the children. We do not conclude that the chancellor manifestly abused his discretion on this point.
¶ 26. Mrs. Allred also complains that the chancellor abused his discretion in giving undue weight to Mr. Allred's testimony over that of her own witnesses. In the first place, the chancellor is vested with the authority to weigh the credibility of the witnesses that come before the court. Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1993). We see nothing in the record that would demonstrate that Mr. Allred's testimony was so unworthy of belief that the chancellor abused his discretion in giving it due consideration in fashioning his ruling. Secondly, in complaining that the chancellor gave undue weight to Mr. Allred's evidence, Mrs. Allred fails to suggest what specific error in his ruling the chancellor was duped into making by his alleged misjudgment of Mr. Allred's credibility. Instead, she urges an across-theboard reversal of all aspects of the chancellor's ruling. Since we have already overturned certain of the chancellor's rulings, such a broad pronouncement would have as its principal effect the setting aside the chancellor's revised visitation schedule. We are unsatisfied that the conflicting evidence on the matter of visitation was such that we can conclude that the chancellor was manifestly in error in his ruling setting up a firm visitation schedule. We, therefore, conclude that this assignment of error is without merit.
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF HINDS *1071 COUNTY ADJUDICATING THE APPELLANT, LEESA CRIM ALLRED, TO BE IN CONTEMPT OF COURT AND ORDERING HER TO PAY $5,000 IN ATTORNEY'S FEES TO PURGE HERSELF OF CONTEMPT IS REVERSED AND RENDERED. THE JUDGMENT ADJUDICATING THE APPELLEE, JUDSON MOORE ALLRED, TO BE IN CONTEMPT OF COURT FOR HIS FAILURE TO COOPERATE IN THE TRANSFER OF TITLE TO THE GMC SAFARI MINIVAN AND FOR HIS FAILURE TO MAINTAIN LIFE INSURANCE COVERAGE ON HIS LIFE FOR THE BENEFIT OF THE MINOR CHILDREN OF THE PARTIES IS REMANDED WITH INSTRUCTIONS TO THE CHANCELLOR TO PROCEED TO ENFORCE THE APPELLEE'S OBLIGATIONS ON THESE MATTERS BY AN APPROPRIATE EMPLOYMENT OF THE CONTEMPT POWER OF THE COURT. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.