908 So.2d 893 (2005)
Thomas J. RILEY, Appellant
v.
Charles R. WIGGINS, Jr., et al., Appellees.
No. 2004-CA-00426-COA.
Court of Appeals of Mississippi.
August 16, 2005.
*895 J. Stewart Parrish, Gregory Malta, Meridian, attorneys for appellant.
J. Niles McNeel, Louisville, attorney for appellees.
Before KING, C.J., CHANDLER and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Thomas J. Riley, the owner of a motor raceway in Lauderdale County, was found in contempt by the Chancery Court of Lauderdale County for his violation of an agreed order regarding the racetrack's hours of operation. Riley appeals arguing that the chancellor erred in finding him in contempt and that she failed to enforce the parties' settlement agreement. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. On February 9, 1999, thirty-three residents of the Arundel Community Association in Lauderdale County, Mississippi, ("the residents") filed a complaint in the Chancery Court of Lauderdale County, alleging that Riley, who owns eighty acres of land near the Arundel community, was creating a private nuisance by constructing a dirt racetrack on his land. The complaint alleged that Riley's actions interfered with the residents' right to peaceful and quiet enjoyment of their respective lands and reduced their property values. Following several postponements of the trial date, this matter came before the Honorable Sarah P. Springer on January 7, 2003, with testimony and evidence presented over three days. The trial was recessed to February 26, 2003, and the parties reached an agreement prior to the resumption of trial. The agreement was announced in open court and subsequently incorporated into the final judgment of the chancery court; the primary provisions of the agreement and judgment were that all races would be concluded by 10:30 p.m., with all cars leaving the track no later than 11:00 p.m., and that Riley would pay a $200 fine, per instance, in liquidated damages should he violate a provision of the agreed settlement.[1]
*896 ¶ 3. The residents brought a motion to cite Riley for contempt on September 29, 2003, alleging that he continually violated all of the terms of the final judgment, including failure to conclude races on time, failure to extinguish race lights, allowing race car drivers to run engines after the designated time and failure to pay liquidated damages as required in the final judgment. Riley responded that the residents were estopped from seeking recovery on the grounds of res judicata and Riley's timely payment of all liquidated damages.
¶ 4. On November 24, 2003, a hearing was held to determine whether Riley was in contempt of court. The court rejected the residents' contention that the final judgment assessed a $200 liquidated damages penalty for each per car violation and held that Riley was only required to pay $200 per night for violating the operating conditions. The chancellor found that Riley had timely and continuously paid $200 per instance in liquidated damages as required by the final judgment. However, the court determined that Riley was "in total derogation and in contumacious disregard of the Final Judgment" and "routinely" operated the racetrack in violation of the judgment. In a bench opinion of December 2, 2003, the chancellor found Riley to be in contempt and ordered his incarceration in the county jail but suspended incarceration in consideration that future operation of the racetrack "strictly comply with the requirements of the final judgment." The chancellor held that Riley's future violations of the final judgment which evidenced a "contumacious disregard of these provisions on a routine basis" would subject him to incarceration. The chancellor further opined that the remedy of citation for contempt would "run with the land" and that any future owner of the raceway who willfully, intentionally, routinely and contumaciously violated the final judgment in the same way as Riley would be held in contempt. Riley appealed contending that the chancellor erred in finding him in contempt and that she failed to enforce the parties' settlement agreement.

STANDARD OF REVIEW
¶ 5. When reviewing a citation for contempt, this Court must first determine whether the alleged contempt is either civil or criminal in nature. Broome v. Broome, 841 So.2d 1204, 1207 (¶ 10) (Miss. Ct.App.2003) (citing Dennis v. Dennis, 824 So.2d 604 (¶ 7) (Miss.2002)). Where the primary purpose of the contempt action is to enforce the rights of private litigants, or if the penalty is to enforce compliance with a court order, then the contempt is civil. Common Cause of Mississippi v. Smith, 548 So.2d 412, 415 (Miss.1989). In civil contempt cases the punishment is conditional in nature, often to coerce future obedience. Id. at 416; Allred v. Allred, 735 So.2d 1064, 1067 (¶ 11) (Miss.Ct.App.1999).
¶ 6. In this case, the purpose of the contempt action was to enforce the rights *897 of the Arundel residents. The chancellor suspended incarceration "on the condition that all future operation of the racetrack strictly comply with the requirements of the final judgment." The chancellor specified that Riley's future incarceration would be ordered if he continued to violate, routinely and contumaciously, the court's final judgment. The chancellor advised the residents that she did not expect Riley to be brought back before the court simply because he committed a minor infraction in the future, but only if he willfully and routinely continued to disregard the final judgment.
¶ 7. In civil contempt actions, the trial court's findings are affirmed unless there is manifest error. Matter of the Estate of Hollaway, 631 So.2d 127, 132 (Miss.1993); Caldwell v. Caldwell, 579 So.2d 543, 545 (Miss.1991). The trial court's findings will be affirmed unless that court was "manifestly wrong, clearly erroneous, or if an erroneous legal standard was applied." Setser v. Piazza, 644 So.2d 1211, 1215 (Miss.1994).

ISSUES AND ANALYSIS

I. WHETHER THE CHANCELLOR ERRED IN FINDING RILEY IN CONTEMPT OF THE COURT'S ORDER WHEN HE ADHERED TO THE LIQUIDATED DAMAGES PROVISION OF THE FINAL JUDGMENT.
¶ 8. Riley argues that since "[p]art of the contract in our case stated Mr. Riley was to pay $200.00 in liquidated damages should he violate a provision of the agreement," and he "upheld his duty of paying liquidated damages, per the final order, when the agreement was not followed," there is "no basis for a contempt of court citation . . . [as] the agreement between the parties was fulfilled and operated as intended." The chancellor rejected this contention, finding that "the intent of the settlement has not been fulfilled through the practice of the parties. At least Mr. Riley's practice." The court found it "obvious" that "the intent of the agreement, the intent of the order was for the neighborhood to become peaceful by midnight on the racing nights and that is not what has been happening."
¶ 9. We agree with the chancellor that Riley did not operate his racetrack in accordance with the order of the court. The final judgment required that Riley operate the racetrack in accordance with conditions for timely completion of races and extinguishing of lights. The record reflects that Riley routinely left the lights at the racetrack illuminated past the designated time and allowed races to continue past 10:30 p.m. Riley's own records reflect that races routinely continued past 11:00 p.m. or midnight, and on one occasion, the races did not end until 3:45 the next morning. There was no dispute as to the frequency of the violations. In fact, the chancellor observed that Riley's record-keeping of the times he closed the racetrack corroborated the time sheet kept by the residents; it appears that almost every weekend the races were not "rained out," Riley violated the hours of operation contained in the order.
¶ 10. Riley argues that since he promptly paid the residents $200 per violation, as required in the judgment, he did not violate the agreed order. Riley appears to assume he had the option of either following the time restrictions or paying liquidated damages. He did not. The most important words contained in Riley's argument, as quoted above, are "part of" The provision for payment of liquidated damages was only "part of" the agreed order of the court. The judgment also requires Riley to operate the racetrack in accordance with the agreed-upon conditions. *898 Payment of liquidated damages does not give Riley permission to violate this other "part of" the order regarding conditions for operation.
¶ 11. We find that the chancellor did not abuse her discretion in holding Riley in contempt. The Mississippi Supreme Court has held that "the chancellor should be allowed wide latitude in the exercise of sound discretion when exerting his coercive powers to enforce his decrees." Matthews v. Matthews, 227 Miss. 358, 360, 86 So.2d 462, 462 (Miss.1956). Since chancellors are vested with substantial discretion, "[o]ur duty to interfere arises only if we are satisfied that the chancellor has manifestly abused the wide latitude of discretion afforded him in such matters." Dunaway v. Dunaway, 749 So.2d 1112, 1115-16(¶ 5) (Miss.Ct.App.1999). It is clear that in this case the provision for liquidated damages was insufficient to compel Riley's performance with the conditions for the operation of the racetrack as contained in the final judgment. A citation for contempt is proper when "the contemnor has willfully and deliberately ignored the order of the court." Strain v. Strain, 847 So.2d 276, 278(¶ 4) (Miss.Ct.App.2003) (quoting Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss.1997)). The record reflects that Riley routinely and deliberately operated the racetrack in violation of the conditions for timely conclusion of races and extinguishing of lights. The chancellor acted within her discretion in holding Riley in contempt.

II. WHETHER THE CHANCELLOR ERRED BY FAILING TO STATE WITH SPECIFICITY WHAT WAS REQUIRED OF RILEY TO AVOID FUTURE INCARCERATION UNDER THE CONTEMPT ORDER.
¶ 12. Riley contends that the court's failure to specify in the contempt order how many times he can violate the agreed judgment before being incarcerated renders the order invalid. Quoting Allred, 735 So.2d at 1067(¶ 12) for the proposition that in order to hold someone in contempt, the court must inform him "with a high degree of clarity as to exactly what [his] obligations are under [the] order," Riley argues that the court failed to inform him what is required in order for him to avoid incarceration in this case. He contends that the chancellor's statement that she would consider incarceration "only under the conditions that [Riley] routinely and contumaciously disregards the terms of [the] judgment," and her admonition to the residents not to bring him "into Court if one time he goes past 11:00 o'clock at night" rendered the order invalid. We find Riley's argument disingenuous at best, and, at worst, evidence that he intends to violate the judgment as often as possible without being incarcerated.
¶ 13. The final judgment was quite specific: races must be concluded by 10:30 p.m.; the grace period to allow race cars to leave the track is 11:00 p.m.; no race car engines may be run past 11:00 p.m., with the exception of loading vehicles for transportation; racetrack lights must be extinguished by 11:00 p.m., with the exception of two lights located on the east and west sides of the racetrack which must be extinguished no later than 12:00. The contempt order suspended Riley's incarceration for past violations of the judgment, conditioned upon "all future operation of the racetrack strictly comply[ing] with the requirements of [the] final judgment." The chancellor held further violations would subject Riley to contempt and he must "strictly comply." Riley's instructions from the court were very clear-strictly comply with the final judgment or face incarceration.
¶ 14. "Contempt matters are committed to the substantial discretion of *899 the trial court. . . ." Brawdy v. Howell, 841 So.2d 1175, 1181 (¶ 23) (Miss.Ct.App.2003). We view the chancellor's statement that she would hold Riley in contempt for routine violation of the judgment and her admonition to the residents not to bring him before the court for an occasional minor infraction to be an indication of how she currently anticipates exercising her discretion. We do not find that the statements invalidate the contempt order; any willful violation of the judgment may result in Riley's incarceration; should he decide to test the chancellor's discretion regarding what constitutes routine violation, he does so at his peril. Riley is well aware of his obligation under the contempt order: "strictly comply" with the judgment regarding operation of the racetrack. His assignment of error is without merit.

III. WHETHER THE CHANCELLOR ERRED IN ALTERING THE AGREEMENT TO INCLUDE A CONTEMPT OF COURT CITATION TO RUN WITH THE LAND.
¶ 15. Riley contends that once the settlement agreement was final, the court lacked the authority to modify the terms of the agreement so as to provide that the contempt order would run with the land and be binding on all subsequent purchasers of the racetrack. Riley's argument misconstrues the nature of the court's authority to issue an order of contempt. Although an agreed order or consent decree is in the nature of a contract, it is also a judgment of the issuing court, subject to the court's enforcement powers. See Guthrie v. Guthrie, 233 Miss. 550, 556-57, 102 So.2d 381, 383 (1958) (consent judgment given same force and effect as judgments rendered after litigation). The United States Court of Appeals for the Fifth Circuit has noted that while "[a] settlement is simply an agreement between the parties and can only be enforced by a subsequent suit," a consent decree has the force of a judgment and "can be enforced by judicial sanctions, including citation for contempt, if the decree is violated." Williams v. City of New Orleans, 729 F.2d 1554, 1559 n. 6 (5th Cir.1984) (citing U.S. v. City of Miami, 664 F.2d 435, 439-40 (5th Cir.1981) (en banc) (Rubin, J., concurring)). As Judge Rubin recognized in his City of Miami concurring opinion:
The parties to litigation may by compromise and settlement not only save the time, expense, and psychological toll but also avert the inevitable risk of litigation. If the parties agree to compose their differences by a settlement agreement, however, the only penalty for failure to abide by the agreement is another suit. Litigants, therefore, have sought to reinforce their compromise and to obtain its more ready enforceability by incorporating it into a proposed consent decree and seeking to have the court enter this decree.
A consent decree, although founded on the agreement of the parties, is a judgment. It has the force of res judicata, protecting the parties from future litigation. It thus has greater finality than a compact. As a judgment, it may be enforced by judicial sanctions, including citation for contempt if it is violated.
City of Miami, 664 F.2d at 439-40 (Rubin, J., concurring) (citations and footnotes omitted). The court's ability to hold a person in contempt for violation of an agreed order, thus, depends not on the agreement of the parties but on the agreement being incorporated into an order of the court and subject to enforcement as a court order.
¶ 16. In the instant case, the final judgment of April 30, 2003, contained a provision that clearly notified any future owners of the racetrack that they would be bound *900 by the final judgment to the same extent as Riley:
IT IS FURTHER ORDERED that this final judgment shall be binding upon and inure to the benefit of the respective legatees, heirs, executors, administrators, assigns and/or successors in interest of both parties, and that its provisions shall be an encumbrance that shall "run with the land," with a copy of said judgment filed among the land records of the Lauderdale Chancery Clerk as notice to all potential successors in interest to the parties. This judgment shall be binding upon those certain pieces, parcels, or tracts of land, real estate, real property, or realty being more particularly described in [the] deed. . . .
¶ 17. After rendition of the bench opinion, counsel for Riley inquired as to how the order of contempt would apply to a successor in interest should the racetrack be sold. The court responded that "contempt runs with the person violating the Court order. If someone else were to purchase the raceway . . . he or she would be bound by the same terms of the Court order. And if he or she violated the Court order in the same way that Mr. Riley has violated the Court order, then the same remedy would be applicable." We find the chancellor's explanation to be in full accord with Mississippi law. See Vinson v. Meridian Masonic Temple Bldg. Ass'n, 475 So.2d 807, 810 (Miss.1985) (successor in interest becomes bound to covenant running with the land as though he were a promisor; during period when he is successor, he must perform acts called for by promise; should he fail to do so, "he is liable as for a breach of a promise made by him. But he is not responsible as a promisor for any defaults . . . which may have occurred before he succeeded to the interest of the promisor in the land") (quoting RESTATEMENT OF THE LAW, PROPERTY, § 538 (1944)).
¶ 18. The trial court is granted contempt powers as a method by which to enforce judgments. Here, the chancellor did not alter the final judgment but indicated that the judgment would be fully enforced against Riley's successors in interest. We find Riley's assignment of error to be without merit.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF LAUDERDALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
NOTES
[1] The final judgment provided in pertinent part:

IT IS, THEREFORE, the Order of the Court that the defendant shall continue to have the right to operate a motor raceway . . . on the property that is the subject of the dispute in this action. It is further ordered that said operation of a motor raceway shall be bound by the following conditions:
1) All motor races conducted on the said property shall be concluded by 10:30 pm, with a thirty (30) minute grace period until 11:00 pm to allow racecars to leave the racetrack.
2) All racetrack lights shall be extinguished no later than 11:00 pm, with the exception of two (2) race track lights located at the east and west sides of the racetrack, respectively, which shall be extinguished no later than 12:00 am.
3) With the exception of allowing racecar drivers to crank their engines for the limited purpose of loading their vehicles for transportation, no racecar engines will be permitted to run after 11:00 pm.
IT IS FURTHER ORDERED that for every violation of the provisions set out hereandabove, the defendant shall pay $200.00 in liquidated damages to the Arundel Community Association. . . .
IT IS FURTHER ORDERED that this final judgment shall be binding upon and inure to the benefit of the respective legatees, heirs, executors, administrators, assigns and/or successors in interest of both parties, and that its provisions shall be an encumbrance that shall "run with the land," with a copy of said judgment filed among the land records. . . .