# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CT-01253-SCT

*LOUISE GOMBAKO-AMOS*

*v.*

*COREY RENE AMOS*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/2023 |
| TRIAL JUDGE: | HON. WAYNE SMITH |
| TRIAL COURT ATTORNEYS: | RONALD L. WHITTINGTON |
| | WAYNE DOWDY |
| | JOHN JAMIL McNEIL |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN S. GRANT, IV |
| | JARED FRANK EVANS |
| ATTORNEYS FOR APPELLEE: | RONALD L. WHITTINGTON |
| | EDWIN L. BEAN, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED, RENDERED, AND REMANDED - 06/04/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     In this certiorari case, we must determine whether the chancellor's finding of civil contempt and award of attorneys' fees was proper.  Because no clear and convincing evidence of a willful and deliberate violation of a court order was presented, we reverse the decisions of the chancery court and the Court of Appeals, we render judgment as to attorneys' fees, and we remand the case to the chancery court to determine the appropriate time and manner for reimbursement.

## FACTS AND PROCEDURAL HISTORY

¶2.     In August 2019, Louise Gombako-Amos and Corey Rene Amos consented to an irreconcilable-differences divorce and obtained a judgment of divorce.  The property settlement agreement (PSA), which was incorporated into the judgment of divorce, provided in relevant part that Louise "shall be responsible for the . . . Trustmark National Bank Judgment" and "shall hold [Corey] harmless from liability thereon."  In February 2021, Trustmark National Bank began to garnish Louise's salary every month in order to pay the Trustmark judgment.  From February 2021 to April 2022, Trustmark National Bank garnished $51,480.34 from Louise's salary.  A total of $50,518.33, however, remained owed on the Trustmark judgment.

¶3.     In March 2022, Corey decided to sell a property in New Orleans that he had received in the PSA.  "Prior to closing, Corey learned [that] the Trustmark judgment had been enrolled as a lien against the property and that he would be required to pay off the judgment in order to complete the sale."  *Gombako-Amos v. Amos*, No. 2023-CA-01253-COA, 2025 WL 1741843, at *1 (Miss. Ct. App. June 24, 2025).  "Corey paid the balance of the judgment ($50,518.33) at closing."  *Id.*  It is undisputed that Corey did not discuss with or advise Louise of the lien nor did Corey advise Louise that he had paid off the Trustmark judgment.[1]

¶4.     Louise was advised by Trustmark National Bank in April 2022 that the Trustmark judgment had been released.  "According to Louise, she 'didn't know why' Trustmark had released the judgment because she 'had no idea [Corey] had sold his property.'"  *Id.*

---

[1] "Louise and Corey both testified that they do not communicate well and do not talk much."  *Id.* n.2.

2

(alteration in original).

¶5.     In June 2022, Corey filed a complaint for citation of contempt for Louise's failure to pay the Trustmark judgment.  In his complaint for contempt, Corey asserted that Louise "ha[d] wholly ignored and failed and refused to remit to him those monies owed and that said conduct constitute[d] a willful contemptuous violation of the terms and provisions of the [PSA]."  Corey requested that Louise be held in contempt and that she be ordered to pay the indebtedness and reimburse him $50,518.33, plus interest and attorneys' fees.

¶6.     After a hearing, the chancellor found Louise had violated the terms of the PSA and was "in willful contumacious contempt of th[e] [c]ourt."  The chancellor ordered Louise to pay Corey the lump sum amount of $50,518.32, plus 5 percent interest, within ninety days.  The chancellor also awarded Corey $4,000 in attorneys' fees to be paid by Louise within sixty days.  Louise timely appealed to this Court, and the case was assigned to the Court of Appeals.

¶7.     The Court of Appeals affirmed the chancellor's decision, stating:

> The PSA required Louise to hold Corey harmless from any liability on the Trustmark judgment. Therefore, Louise was required to reimburse Corey once he had to pay the judgment to obtain a release of Trustmark's lien on his property. In addition, we cannot say that the chancellor clearly erred or abused his discretion by finding Louise in contempt for failing to comply with the PSA and the divorce decree.

*Id.* at *4.

¶8.     Louise timely filed a petition for writ of certiorari, which we granted.  In her petition, Louise argues that the finding of contempt was improper and that the award of attorneys' fees should be set aside.

3

**STANDARD OF REVIEW**

¶9. "When reviewing a chancellor's findings, this Court employs a limited standard of review." *Williams v. Williams*, 347 So. 3d 178, 181 (Miss. 2022) (internal quotation marks omitted) (quoting *Miller v. Pannell*, 815 So. 2d 1117, 1119 (Miss. 2002)). "The chancellor's findings will not be disturbed upon review unless the chancellor was manifestly wrong, clearly erroneous or applied an incorrect legal standard." *Id.* (internal quotation marks omitted) (quoting *Miller*, 815 So. 2d at 1119). "The standard of review employed by this Court for review of a chancellor's decision is abuse of discretion." *Id.* (internal quotation marks omitted) (quoting *Miller*, 815 So. 2d at 1119). "[Q]uestions of law are reviewed de novo." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Countrywide Home Loans, Inc. v. Parker*, 975 So. 2d 233, 234 (Miss. 2008)).

¶10. "Contempt is an issue of fact to be decided on a case-by-case basis." *R.K. v. J.K.*, 946 So. 2d 764, 777 (Miss. 2007) (citing *Mizell v. Mizell*, 708 So. 2d 55, 64 (Miss. 1998)). "Normally, the factual findings of the chancellor are affirmed unless manifest error is present and apparent." *Purvis v. Purvis*, 657 So. 2d 794, 797 (Miss. 1994) (citing *Caldwell v. Caldwell*, 579 So. 2d 543, 545 (Miss. 1991)).

**DISCUSSION**

*I. Contempt*

¶11. Louise argues the finding of contempt was improper "[b]ecause there is no evidence [she] willfully violated a court order" and "[b]ecause the . . . PSA is silent or ambiguous on how and when [she] was required to satisfy the Trustmark debt[.]" We agree.

4

### A. Louise did not willfully violate the PSA.

¶12. This case involves an issue of civil contempt. "The purpose of civil contempt is to compel compliance with the court's orders, admonitions, and instructions, while the purpose of criminal contempt is to punish." *Corr v. State*, 97 So. 3d 1211, 1214 (Miss. 2012) (internal quotation marks omitted) (quoting *Graves v. State*, 66 So. 3d 148, 151 (Miss. 2011)). "An adjudication of contempt is a serious matter and must, in the case of civil contempt, be prove[d] by clear and convincing evidence." *Allred v. Allred*, 735 So. 2d 1064, 1067 (Miss. Ct. App. 1999) (citing *Masonite Corp. v. Int'l Woodworkers of Am.*, 206 So. 2d 171, 180 (Miss. 1967)). "To be found in [civil] contempt, a party has to willfully and deliberately violate a court order." *McKnight v. Jenkins*, 155 So. 3d 730, 732 (Miss. 2013) (citing *R.K.*, 946 So. 2d at 778).

> [O]ur inquiry into civil contempt challenges is limited to "whether or not the order was violated, whether or not it was possible to carry out the order of the court, and if it was possible, whether or not such violation was an intentional and willful refusal to abide by the order of the court."

*McPhail v. McPhail*, 357 So. 3d 602, 610 (Miss. 2023) (quoting *A.M.L v. J.W.L.*, 98 So. 3d 1001, 1019 (Miss. 2012)).

¶13. Here, no clear and convincing evidence was presented that Louise "willfully and deliberately violate[d] [the] court['s] order," *McKnight*, 155 So. 3d at 732 (citing *R.K.*, 946 So. 2d at 778), or "intentional[ly] and willful[ly] refus[ed] to abide by the [court's] order[.]" *McPhail*, 357 So. 3d at 610 (internal quotation mark omitted) (quoting *A.M.L.*, 98 So. 3d at 1019). The PSA ordered Louise to be responsible for the Trustmark judgment. In an effort to comply with the PSA and to pay off the Trustmark judgment, Trustmark National Bank

5

was garnishing Louise's salary every month. Louise was unaware that Trustmark National Bank had a lien on Corey's New Orleans property or that Corey had paid off the Trustmark judgment. At trial, Louise explained:

Q. The Garnishment stopped, didn't it?

A. Well, Susan Steadman's office called me around April and said your [j]udgment is released, and I didn't know why. I thought that the amount of funds that was initially o[wed] was paid because I paid to the tune of like $55,000.00 that they had taken out of my check for that period of time. So, I said, well maybe they are giving me a gift. I had no idea [Corey] had sold his property.

Q. Well, today, you know, and your lawyer has been advised, and you were served with a [c]omplaint of [c]ontempt advising you that you had not paid that debt; isn't that correct?

A. I do. I am aware of the [s]ummons about [c]ontempt, but, again, I was paying the debt. [Trustmark National Bank] . . . was getting money every month out of my checking account for that debt. So, when the debt was resolved [the bank] stopped. I didn't stop it.

Q. And, so, it's your position today that you don't owe [Corey] anything?

A. I owed [Trustmark National Bank] the money that was judged against both of us, and that I agreed to take on. But, at the same time, I was fulfilling that responsibility before he sold his home.

Q. Ma'am, you –

A. And I had no idea he sold his home.

Q. You didn't assume responsibility. You were [o]rdered by th[e] [c]ourt to pay that debt.

A. And I was. I was paying that debt.

. . . .

Q. My question simply was you didn't think it appropriate to say, Corey,

6

they have stopped garnishing my check for the New Orleans home? What's going on?

A.  So, as I stated previously when Trustmark [National Bank], Susan Steadman's office, called me to say that they were releasing the [j]udgment, I had been in negotiations with them for years trying to get this interest taken off and trying to get it to a suitable point where I can make a lump sum payment. . . . When I reached a certain amount at . . . [$]55,000, I in my heart thought that, well, maybe they are going to excuse all the rest because I did cover most of what the initial loan was.

. . . .

So, [Corey] didn't . . . he didn't let me know that he was selling his property. . . . He didn't communicate with me either. It's two ways.

¶14.  The undisputed facts show that Louise was complying with the chancellor's order by paying the Trustmark judgment each month via garnishment. At no time before the contempt action was filed did Louise learn of the lien and Corey's payment and refuse to pay or reimburse the debt. In other words, no evidence suggests that before Corey filed the contempt action, Louise deliberately ignored the lien on the property or willfully refused to pay or reimburse Corey. Instead, as Louise testified, she had no idea that Corey had paid the Trustmark judgment, and when Trustmark National Bank advised that the Trustmark judgment had been released, she thought that Trustmark National Bank had excused the balance because she had paid "most of what the initial loan was."

¶15.  Louise's conduct did not evince a willful and deliberate violation of the PSA, nor did it show an intentional and willful refusal to abide by the PSA. Thus, the finding of willful contumacious contempt was erroneous.

B.  *The PSA is vague.*

7

¶16. "Before a party may be held in contempt for failure to comply with a judgment, 'the judgment must be complete within itself . . . leaving open no matter or description or designation out of which contention may arise as to meaning.'" ***Davis v. Davis***, 829 So. 2d 712, 714 (Miss. Ct. App. 2002) (alteration in original) (quoting ***Wing v. Wing***, 549 So. 2d 944, 947 (Miss. 1989)). "[I]f the judgment or decree giving rise to the contempt action is overly vague or nonspecific, a finding of contempt is improper." ***Showers v. Norwood***, 914 So. 2d 758, 761 (Miss. Ct. App. 2005) (citing ***Moses v. Moses***, 879 So. 2d 1036, 1040 (Miss. 2004)). Defenses to contempt include an "inability to pay, that the default was not willful, that the provision [violated] was ambiguous, or that performance was impossible." ***Garner v. Garner***, 283 So. 3d 120, 141 (Miss. 2019) (alteration in original) (internal quotation marks omitted) (quoting ***Evans v. Evans***, 75 So. 3d 1083, 1087 (Miss. Ct. App. 2011)). "[T]hat the court order was unclear" is also a viable defense to contempt. ***A.M.L.***, 98 So. 3d at 1019 (internal quotation mark omitted) (quoting ***Ellis v. Ellis***, 840 So. 2d 806, 811 (Miss. Ct. App. 2003)).

¶17. The PSA required Louise to "hold [Corey] harmless from any liability" related to the Trustmark judgment. At the contempt hearing, the chancellor interpreted this to mean that Louise was required to pay Corey a lump-sum payment, and the chancellor ordered Louise to pay Corey a lump-sum payment of $50,518.32 within ninety days. The PSA, however, does not require this form of payment, i.e., lump sum, nor does it require immediate reimbursement.

¶18. The PSA "is vague or [unclear] as to *how* Louise was to pay the Trustmark judgment

8

in order to hold Corey harmless." *Gombako-Amos*, 2025 WL 1741843, at *8 (McDonald, J., concurring in part and dissenting in part). It did not require her to make a lump sum payment, nor did it require payment within a specified amount of time. The PSA did not prohibit payment by "garnishment or even by . . . a separate refinancing agreement with Trustmark [National Bank]." *Id.* The PSA

> also contained no instructions as to how the parties should proceed if Corey paid the Trustmark judgment instead of Louise. Compounding the [PSA]'s ambiguity, Corey failed to communicate any request to Louise [explaining] how he would like to proceed, either when he learned of the . . . lien [on the property] or after voluntarily paying [the Trustmark judgment].

*Id.*

¶19. While "Louise is required to reimburse Corey for the amount he paid to release the lien on the New Orleans home[,]" "in the absence of specific directions in the PSA as to how to proceed [under these circumstances], Louise should not be held in willful contempt for failing to hold Corey harmless." *Id.* Thus, the finding of willful contumacious contempt was erroneous.

¶20. The dissent focuses on Louise's ability to pay, noting Louise's income and assets, which, according to the dissent, "would have paid the indebtedness" and "willfully made the indebtedness disappear." Diss. Op. ¶ 29. But the issue is not Louise's ability to pay, nor is it Louise's assets or whether she disclosed those assets. Instead, as the chancellor noted, the issue before the court was whether Louise willfully and deliberately violated the PSA, which ordered Louise to be "responsible for the . . . Trustmark National Bank Judgment" and to "hold [Corey] harmless from liability thereon."

9

¶21. Regarding Louise's court-ordered obligation to be responsible for the Trustmark judgment, Louise complied with the order by paying toward the Trustmark judgment every month, albeit through a garnishment. Even the chancellor acknowledged that Louise was paying the judgment.

¶22. Regarding Louise's court-ordered obligation to hold Corey harmless for the Trustmark judgment, the dissent asserts Louise's "actions were purposeful," stating, "[i]nstead of paying Corey $50,518.33 according to the PSA she agreed to, she *chose* to spend hundreds of dollars on herself, her husband, and her closely-held business." Diss. Op. ¶ 36. But as previously discussed, the PSA did not explain how Louise was to pay the Trustmark judgment in order to hold Corey harmless. Indeed, it did not require a time frame for payment nor did it explain how the parties should proceed if Corey paid the Trustmark judgment instead of Louise. Nothing in the PSA required Louise to make an immediate lump-sum payment to Corey, despite the dissent's suggestion that she had the financial means to do so.

¶23. The dissent further asserts that "Louise knew about the indebtedness at least from November 18, 2020 to the chancellor's final judgment on November 3, 2023, a span of almost three years. She *willfully chose* to withhold payment and now attempts to litigate the terms of the PSA she *agreed* to[.]" Diss. Op. ¶ 30. But as discussed, Louise had no knowledge that the Trustmark judgment had been enrolled as a lien against Corey's property, that Corey had sold the property, or that Corey had paid off the Trustmark judgment until *after* Corey filed his contempt action against her. Simply because Louise chose to defend the contempt action and file an answer and affirmative defenses does not amount to a "willful[]

10

cho[ic]e to withhold payment."[2]  Diss. Op. ¶ 30.

¶24.    The dissent argues that "[a]t no point before the trial court did Louise argue the PSA

was vague, ambiguous, or unclear as to how she would indemnify Corey."  Diss. Op. ¶ 37.

The dissent claims that because Louise failed to assert this issue in the trial court,

"[v]agueness and ambiguity were not properly preserved for appeal."  Diss. Op. Part I(B).

But while Louise did not specifically argue that the PSA was vague, ambiguous, or unclear,

she did argue the PSA did not contemplate reimbursement, i.e., the PSA did not contemplate

how to proceed under these circumstances in which Corey voluntarily paid the debt.  As

Louise's counsel noted at the hearing,

> [R]eimburse[ment] . . . [is] not an action under contempt. Reimbursement is
> not . . . you didn't pay the [j]udgment. [Louise] did everything she was asked
> to do until [Corey] . . . [v]oluntarily . . . cho[s]e to pay [the Trustmark
> judgment] off. . . . [T]his Judgment [of Divorce][3] does not state for her or

---

[2] As Judge McDonald noted in her separate opinion:

In answering the contempt petition, Louise raised a colorable defense for the court to consider—namely that Corey's voluntary assumption of the debt may have relieved her of further responsibility for it. She should not have been punished and held in contempt for exercising her right to raise an affirmative defense.

    In summary, Louise was not in willful, contumacious contempt because she was faithfully paying the debt, and when accused of contempt, her response was simply raising a colorable defense, which does not give rise to a finding of willful contempt. Louise did not receive any request for reimbursement from Corey before being hauled into court two months after he voluntarily paid the debt.

*Gombako-Amos*, 2025 WL 1741843, at *6-7 (McDonald, J., concurring in part and dissenting in part).

[3] The PSA was incorporated into the Judgment of Divorce.

11

him to be indemnified. It says whole and harmless. It does not state it to be indemnified. Those are two separate and distinct legal things, and he made this payment.

Although the trial court disagreed and held Louise in contempt, Louise's argument that the PSA was unclear regarding how to proceed under these circumstances was sufficiently asserted at trial and therefore preserved for appeal.

¶25. The decisions of the chancellor and the Court of Appeals finding Louise in civil contempt are reversed. The case is remanded to the chancery court for consideration regarding the appropriate time and manner in which Louise shall reimburse Corey.

## II. Attorneys' Fees

¶26. "Attorney's fees are properly assessed against a party found to be in contempt." *Evans*, 75 So. 3d at 1090 (citing *Mount v. Mount*, 624 So. 2d 1001, 1005 (Miss. 1993)). But here, the chancellor erred by finding Louise in civil contempt. Because the chancellor's award of attorneys' fees was based on an erroneous contempt finding, the $4,000 award of attorneys' fees is reversed and rendered.

## CONCLUSION

¶27. The decisions of the chancery court and the Court of Appeals finding Louise in civil contempt are reversed, the $4,000 award of attorneys' fees is rendered, and the case is remanded to the chancery court for a determination regarding the time and manner in which Louise shall reimburse Corey.

¶28. **REVERSED, RENDERED, AND REMANDED.**

**KING AND COLEMAN, P.JJ., ISHEE, SULLIVAN AND BRANNING, JJ., CONCUR. RANDOLPH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**RANDOLPH, CHIEF JUSTICE, DISSENTING:**

¶29.   One wonders if Louise Witherspoon[4] thought she had won a lottery. She avoided paying what she *agreed* to pay her ex-husband,[5] Corey Amos, in a property-settlement agreement ("PSA") incorporated into the trial court's final judgment and order. Indeed, she lived like she had come into a substantial amount of money. In May 2023, six months before she was found in contempt, she was earning a gross monthly income of $26,846.96 as an OB-GYN, $15,157.54 of which she claimed in net earnings. She was also a co-owner of closely held business with Demetrius Witherspoon. With such an income, she could have willfully made the indebtedness disappear. After she and Corey entered into the PSA in August 2019, Louise and her current husband purchased commercial property for $290,000 through their holding company, an eighty-two-acre waterfront property that required a $110,000 down payment, and a 2023 Porsche Panamera worth about $123,650. Any one of these extravagant purchases, none of which she disclosed in her Uniform Chancery Court Rule 8.05 financial disclosures,[6] would have paid the indebtedness. Apart from these purchases, she additionally

---

[4]While Louise's name on the case name is Gombako-Amos, she has since remarried and taken the name of her most recent husband, Demetrius Witherspoon.

[5]When Trustmark began to garnish Corey's paychecks, the liability was $90,875.21.

[6]She claims she did not disclose the two properties because the properties were purchased through the holding company, which she says she did not think needed to be disclosed. She also claims she did not disclose the Porsche because her current husband purchased the vehicle himself, ostensibly without consulting her.

13

had almost $265,000 in an IRA with Stanley Investment[7] on which she could have drawn down to pay off the indebtedness.

¶30.    Louise knew about the indebtedness at least from November 18, 2020,[8] to the chancellor's final judgment on November 3, 2023, a span of almost three years. She *willfully chose* to withhold payment and now attempts to litigate the terms of the PSA she *agreed* to with the advice of her counsel at the time.

¶31.    The trial court concluded that Louise's nonpayment was willful contempt and that her featherweight excuses to the contrary were unbelievable. In fact, the trial court declared that her contempt was "very obvious." The Court of Appeals affirmed. ***Gombako-Amos v. Amos***, No. 2023-CA-01253-COA, 2025 WL 1741843, at *1 (Miss. Ct. App. June 24, 2025). This Court should not have granted her petition for certiorari. *See* Miss. R. App. P. 17. Because the Court of Appeals correctly affirmed, this Court should issue an order dismissing certiorari after grant.

> **I.    The trial judge did not manifestly err by finding Louise in civil contempt.**
>
>> *A.    The trial judge did not manifestly err by finding that Louise's contempt was willful.*

---

[7]Louise also had $131,000 in an equity account with the Medical Assurance Company of Mississippi.

[8]Corey filed his amended motion for citation of contempt on November 18, 2020. Corey not only moved for contempt based on Louise's refusal to pay her debt. Corey also complained that Louise denied Corey visitation with their daughter and refused to refinance "her automobile, 2015 Cadillac SRX, to relieve the Movant's mother . . . of financial liability thereon."

14

¶32.   "The burden of proof in civil contempt shall be proof by a preponderance of the evidence." Miss. Code Ann. § 11-51-12(4) (Rev. 2019). The finder of fact, in this case the chancellor, found Louise to be in civil contempt. We only review civil contempt for manifest error. *Hanshaw v. Hanshaw*, 55 So. 3d 143, 147 (Miss. 2011) (citing *Purvis v. Purvis*, 657 So. 2d 794, 796 (Miss. 1994)). No manifest error is apparent from the chancellor's findings here. Under the manifest-error rule, this Court will affirm the trial court's findings "unless they are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Est. ex rel. Campbell v. Calhoun Health Servs.*, 66 So. 3d 129, 133 (Miss. 2011) (internal quotation marks omitted) (quoting *City of Jackson v. Powell*, 917 So. 2d 59, 68 (Miss. 2005)). *Manifest* is defined as "obvious." *Manifest*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/manifest (last visited June 3, 2026). The chancellor's finding that Louise's contempt was "very obvious" was not manifest error. *Supra* ¶ 31.

¶33.   No court contends that Louise is not liable for the debt. The only dispute is whether she owes attorneys' fees, which rests upon her being found in civil contempt.

¶34.   The trial court's actions do not reveal manifest error, clear error, or an erroneous legal standard. At the end of the trial, the chancellor made findings on certain facts, *inter alia*: (1) the PSA required that Louise "shall be responsible for" the Trustmark National Bank Judgment "and shall hold husband harmless from liability thereon"; (2) the parties agreed to the PSA themselves, and neither party presented evidence showing Louise failed to fully understand the agreement; (3) for more than a year before the hearing, Louise knew that

15

Corey was seeking payment of $50,518.33, the amount of the Trustmark indebtedness; (4) Louise unconvincingly claimed she thought Trustmark wrote off the debt, thus taking no action after Trustmark released the judgment; and (5) Corey's payment was not a gift because the parties harbored animosity toward each other. The record reveals that none of these findings was erroneous. They are not manifestly wrong. These collectively, with the acquisition of the purchases, support the chancellor's finding that Louise acted in willful contempt of court.

¶35. Additional facts support the chancellor's finding. No one disputes Louise knew Corey sold the house two days before Trustmark released the debt. Louise also testified at trial that "when I reached a certain amount at the $55,000, I in my heart [sic] thought that, well, maybe they are going to excuse all the rest because I did cover *most of what the initial loan was*." (Emphasis added.) Close, but no cigar.[9] Finally, some of Louise's testimony suggested she previously hid assets during the divorce. Based on the aforementioned facts, the trial judge was not clearly erroneous or manifestly wrong by finding she willfully violated the terms of the PSA.

¶36. A party's failure to comply with a divorce decree is prima facie evidence of contempt, and the burden shifts to the contemnor to show impossibility or lack of willfulness. *See* ***Brown v. Gillespie***, 465 So. 2d 1046, 1048 (Miss. 1985); ***Ladner v. Ladner***, 206 So. 2d 620,

---

[9]The chancellor still held her in contempt because she chose to shirk her duty to comply with the court's order. *See* Maj. Op. ¶ 21. Trial judges "have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril." ***Fresenius Med. Care Holdings, Inc. v. Hood***, 269 So. 3d 36, 57 (Miss. 2018) (internal quotation mark omitted) (quoting ***City of Jackson v. Presley***, 942 So. 2d 777, 781 (Miss. 2006)).

623 (Miss. 1968), *abrogated on other grounds by* **Bubac v. Boston**, 600 So. 2d 951 (Miss. 1992). Louise never submitted a legitimate or legal basis for not paying. She never argued that her failure to pay was an accident; or that she forgot; or that she was negligent; or that she was willfully ignorant; or even that she could not pay.[10] The only argument she advanced was that Corey's payment was voluntary, which the Court of Appeals discussed was wholly inapplicable; she thought the "Southern Court District" forgave the debt; and she thought Trustmark gave her a gift and forgave the debt even though she knew she still owed on the principal. Louise is not naive; she graduated from a four year college and medical school, and she runs a business with her current husband. Her actions were purposeful. Instead of paying Corey $50,518.33 according to the PSA she agreed to, she *chose* to spend hundreds of thousands of dollars on herself, her husband, and her closely-held business. "The provisions of a [PSA] executed prior to the dissolution of marriage must be interpreted by courts as any other contract." **Dennis v. Dennis**, 234 So. 3d 371, 376 (Miss. 2017) (quoting **West v. West**, 891 So. 2d 203, 210 (Miss. 2004)). This Court should not let Louise get away with avoiding compliance with both the trial court's order and a contract into which she voluntarily chose to enter.

B.      *Vagueness and ambiguity were not properly preserved for appeal.*

¶37.    At no point before the trial court did Louise argue the PSA was vague, ambiguous, or unclear as to how she would indemnify Corey. She consistently maintained that she "fully

---

[10]At the end of the hearing, Louise's counsel expressly disavowed any argument that she was unable to pay.

understood" the agreement. In the Court of Appeals, she pointed out that the PSA did not provide a timeline for repayment, but she did not argue or cite law showing vagueness, ambiguity, or lack of clarity before the trial court. This contention only first appeared in a separate opinion in the Court of Appeals. *Gombako-Amos*, 2025 WL 1741843, at *7 (McDonald, J., concurring in part and dissenting in part). Now, Louise adopts the separate opinion as her argument before this Court.

¶38.    "It is well-settled that issues presented for the first time on appeal are procedurally barred from consideration." *Lewis v. Forest Fam. Prac. Clinic, P.A.*, 124 So. 3d 654, 658 (Miss. 2013) (citing *Est. of Myers v. Myers*, 498 So. 2d 376, 378 (Miss. 1986)). The Court of Appeals separate opinion erred by raising vagueness and ambiguity *sua sponte*; we should not err further by addressing this new argument.

**II.    The trial judge did not err by awarding Corey attorneys' fees.**

¶39.    "[G]enerally, [in civil contempt matters,] the court may award the prevailing party attorney's fees." *Hanshaw*, 55 So. 3d at 147 (citing *Ladner v. Logan*, 857 So. 2d 764, 773 (Miss. 2003)). *May* is discretionary. Because Louise was properly found in civil contempt, the trial court properly awarded attorneys' fees. *Id.* Absent assessment by the court, Corey would be penalized for litigating a previously agreed-to PSA in the trial court and on appeal. Without legal enforcement of the PSA, he would have no way to recover payment from Louise. Corey should not be punished for utilizing his one path to a just outcome.