759 So.2d 1250 (2000)
Harishankar L. SANGHI and Alice S. Sanghi, Appellants,
v.
Vijay K. SANGHI, Appellee.
No. 1998-CA-01241-COA.
Court of Appeals of Mississippi.
May 23, 2000.
*1251 Harishankar Sanghi and Alice Sanghi, Appellants, pro se.
Reilly Morse, Gulfport, Attorney for Appellee.
EN BANC.
SOUTHWICK, P.J., for the Court:
¶ 1. In a dispute with his former wife, Dr. Harishankar Sanghi was adjudged by the Harrison County Chancery Court to be in willful contempt. The chancellor entered an agreed order purging Dr. Sanghi of the contempt citation in exchange for the sale of certain real property to satisfy judgments against Dr. Sanghi for arrearage in both child support and alimony. Dr. Sanghi appeals this order asserting that the lower court did not have personal jurisdiction, that he was denied due process, that the judgment is not supported by the evidence and that the agreed order was not entered into freely. We find that the failure to provide proper service of a summons upon Dr. Sanghi, notifying him *1252 of the hearing that was to be held on the new pleadings filed against him, renders the judgment invalid. We reverse and remand for further proceedings.

FACTS
¶ 2. Harishankar Sanghi and Vijay Sanghi were married in 1961 and were divorced in 1988. They had four children during the course of their marriage, three of whom are still minors. Under the terms of the divorce, Mrs. Sanghi was awarded alimony in the amount of $1,500 per month and child support of $550 per month per child.
¶ 3. In November 1994, Dr. Sanghi was fired from his job and was unable to secure other employment for nearly two years. During this period Dr. Sanghi filed for Chapter 7 bankruptcy. Although Dr. Sanghi was unemployed, he was able to pay approximately $21,000 of his alimony and child support obligations between November 1994 and April 1995. Dr. Sanghi made no payments from May 1995 until September 1996 when he began receiving income from his new job. When Dr. Sanghi did resume payment of his obligations, he did not pay the full amount each month.
¶ 4. In December 1995, Mrs. Sanghi filed a motion for contempt against Dr. Sanghi. This resulted in a judgment of $55,381 against Dr. Sanghi for back child support, alimony and attorney's fees. The judgment also resulted in a lien being placed on Dr. Sanghi's townhouse in Biloxi.
¶ 5. Mrs. Sanghi filed a second motion for contempt in September 1997. At that time a withholding order was issued on the 1995 judgment, followed by additional withholding orders in October 1997 and January 1998. The withholdings began in February 1998. In February, Mrs. Sanghi filed three motions that present the issues that we now face: a motion to enforce the property settlement agreement, a motion for a writ of execution, and an amended motion for contempt.
¶ 6. In June 1998, the chancellor entered a judgment against Dr. Sanghi in the amount of $28,593.64, which was for delinquent alimony and child support, plus $850 in attorney's fees. Additionally, the chancellor found that Dr. Sanghi was in wilful and contumacious contempt of court. He was ordered arrested and incarcerated until such time as he purged himself of contempt. On July 1, 1998, Dr. Sanghi was arrested and incarcerated after unsuccessful settlement negotiations with Mrs. Sanghi's attorney. Two days later, Dr. Sanghi and his current wife Alice both signed the agreed order releasing their interests in the Biloxi townhouse. Dr. Sanghi was released from jail.

DISCUSSION
¶ 7. When reviewing questions concerning jurisdiction, this court employs a de novo review. This court is in the same position as the trial court, with all facts set out in the pleadings or exhibits. Sorrells v. R & R Custom Coach Works, Inc., 636 So.2d 668, 670 (Miss.1994).
¶ 8. The first important matter is that the record presented to us of the critical events is fragmentary. The appellant is responsible for designating the record in a manner sufficient to allow the appellate court to review his issues. M.R.A.P. 10(b); Cossitt v. Alfa Ins. Corp., 726 So.2d 132, 135 (Miss.1998). Even when as here an appellant appears without counsel, the same obligations apply to him. Dethlefs v. Beau Maison Development Corp., 511 So.2d 112, 118 (Miss.1987). Our task is to decide the case based on what is present, and in most situations to hold absences against the appellant. Documents appear in the record excerpts provided by the parties that are not in the record. The central document in question, which is a notice from a court administrator about the first scheduled hearing, is one of those non-record documents. Ultimately we find that even if the missing documents state just what the appellee contends, they would be insufficient for jurisdiction.
¶ 9. The original complaint in this action was filed in May 1988. A divorce was *1253 granted that year. Ever since petitions to modify, enforce, or seek contempt have been recurrent. For example, in June through November, 1997, the last date being just three months prior to the matters that concern us, there were motions and orders filed in the case. This particular chapter of the long-running story begins with three petitions by the former wife filed on February 6, 1998. They were for contempt due to failure to pay child support, for enforcement of the property settlement, and for a writ of execution. It is the proper service of the notice of these petitions that is at issue in this appeal.
¶ 10. We note here, and discuss more later, that these papers were denominated "motions" instead of "petitions." Using this wrong caption is a matter of form that does not invalidate the filing, but it may well mislead the court clerk. Much of what occurred in this suit as to notice would have sufficed for motions in current and active litigation. Our issue is whether it suffices for petitions that revive a domestic case for enforcement or modification of decrees previously entered.
¶ 11. Rule 4 provides for the means of service of the original complaint and the form of the accompanying summons. M.R.C.P. 4. These proceedings were ten years past the start of the litigation. Rule 5 applies to giving notice of almost every document filed after the original complaint, but as we will discuss that rule does not apply to these renewed divorce proceedings. M.R.C.P. 5(a); Leaf River Forest Products, Inc. v. Deakle, 661 So.2d 188, 194 (Miss.1995).
¶ 12. Much of the case law referenced by Dr. Sanghi discusses the constitutional notice requirements that must be met to commence litigation in which a personal obligation is to be imposed on a defendant. E.g., Hamm v. Hall, 693 So.2d 906, 909 (Miss.1997). A defendant must be given reasonable notice "that an action has been brought" and there must be a sufficient connection between the defendant and the forum. Id.(quoting Kulko v. Superior Court of California, 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)). What we review is a somewhat different notice.
¶ 13. A domestic relations case remains subject to recurring motions even after all prior contested matters are resolved. A pleading to alert the other party that a new dispute has arisen is in the nature of awakening a dormant suit, distinguishable both from commencing new litigation and from just filing a motion in active litigation. The applicable procedural rule is one that applies to petitions to modify or enforce final custody, alimony or support judgments. M.R.C.P. 81(d)(2). A summons is to be filed:
Upon the filing of any action or matter listed in subparagraphs (1) and (2) above, summons shall issue commanding the defendant or respondent to appear and defend at a time and place, either in term time or vacation, at which the same shall be heard.
M.R.C.P. 81(d)(5).
¶ 14. Rule 4 does not fully apply to such proceedings. Issuance of a summons in the form required by Rule 4 to notify a party of a Rule 81(d)(2) petition has no effect. Powell v. Powell, 644 So.2d 269, 273-74 (Miss.1994). A Rule 81 summons notifies a party "of the time and place where he is to appear and defend," while a Rule 4 summons requires a written response within 30 days. Id. at 273. To utilize a summons form that provides only Rule 4 information necessarily means that Rule 81(d) information is not given. We will later discuss the available means of service.
¶ 15. The Rules contain sample forms for both kinds of summons. M.R.C.P.App. A, Forms 1B, 1D and 1DD. Sample form 1D states that the petition is attached to the summons, though the Rule itself is not explicit. Failure to attach would mean that the person served would not know the matter against which a defense is to be made.
*1254 ¶ 16. Once the petitions ("motions") were filed on February 6, 1998, they were served on Dr. Sanghi by certified mail. Not included was a summons of any kind. Instead of a summons, on February 9, 1998, a notice was prepared by the chancery court's administrator, informing both the plaintiff and the defendant that a hearing on the matter was set for March 9, 1998. That was sent first class mail. Dr. Sanghi's receipt of the notice is revealed by his making a phone call to the administrator asking that the hearing be postponed due to medical problems. As a result the hearing was rescheduled and a new notice by the administrator mailed to the parties indicating that they should appear on April 13.
¶ 17. Prior to the latter date, Dr. Sanghi sought to remove some part of the proceedings to federal court. The notice of removal is not in the record, but according to a docket entry a "notice of removal" was filed on March 13, 1998. On June 24, the federal district judge dismissed the removal as seeking federal court review of a matter beyond the court's jurisdiction. Mrs. Sanghi's counsel at the April 13 hearing indicates that the removal concerned the efforts to sell property, which was the subject of only one of the three petitions filed by Mrs. Sanghi on February 6. Dr. Sanghi's brief appears to confirm that this was the only part of the proceedings that were removed.
¶ 18. A petition to remove to federal court halts the state proceedings as soon as the steps necessary to remove are completed. 14A WRIGHT & MILLER, FED. PRAC & PROC., § 3737 at 550-51; 28 U.S.C.A. § 1446 (Supp.1999). The state court has no further authority to act even if a frivolous removal petition has been filed, until such time as the case is remanded. 28 U.S.C.A. § 1446(d). It appears that no decision on the property sale occurred in state court until the remand order. What was considered at the April 13 hearing was only the unpaid support. In the absence of any evidence of the sweep of the removal petition, and further absent any argument by either party regarding the removal, we consider that the issue is beyond the necessity of our review.
¶ 19. The April 13 hearing was conducted without Dr. Sanghi's participation. The chancellor signed two orders on June 26, which was after the remand order of June 24 by the federal district judge. Based on financial information provided at the April 13 hearing, Dr. Sanghi was found in contempt and his past-due support obligation as of that date was about $28,000. Also imposed was an award of $850 in attorneys' fees. Dr. Sanghi was ordered incarcerated in the Harrison County jail until he purged himself of this contempt. A separate order required Dr. Sanghi within 14 days to execute certain documents necessary for the sale of the property.
¶ 20. Dr. Sanghi was not arrested until July 1, and he was then incarcerated. On July 2 a hearing was held at which Dr. Sanghi was present. He was represented by counsel, who apparently had negotiated with Mrs. Sanghi's counsel the details for the sale of the property, the application of the proceeds to some of Dr. Sanghi's obligations to his former wife, and the resulting release of Dr. Sanghi from jail. Dr. Sanghi objected to part of that agreement, as he did not agree as to the total amount that he owed and to which debt the sale proceeds would be applied. The hearing ended with the chancellor ordering him back to jail. The pleadings reveal a July 3 authorization signed by the chancellor to release him from jail. All parties, including Dr. Sanghi, signed a court order of July 3 providing for the sale of the property, the application of the proceeds, and the amount of the debt to which these proceeds would be applied. Despite this agreement, Dr. Sanghi filed a notice of appeal that has led to the present proceedings.
¶ 21. Mrs. Sanghi argues here that Dr. Sanghi's signature on the July 3, 1998 judgment is a waiver of all arguments regarding the propriety of any of the trial court's actions. It is true that a party may *1255 waive its right to appeal. Nobile v. Nobile, 535 So.2d 1385, 1387 (Miss.1988). However, such an agreement must be based on sufficient consideration and "should be very clear in its terms, and leave no doubt of the intention of the party to cut himself off from the right of appeal." Id. Nothing in this signature on a final judgment indicates that Dr. Sanghi was relinquishing his right to appeal. The right to appeal is never mentioned in the judgment. Dr. Sanghi may have been willing to end further dispute at the trial court level, but he never explicitly waived, at least not in writing, his appeal rights.
¶ 22. A separate line of authority provides that a party may not appeal a "consent judgment." See LUTHER T. MUNFORD, MISSISSIPPI APPELLATE PRACTICE § 6.2 (1997) at 6-6. Until 1991 there was a specific statutory bar to appealing from a consent judgment. Miss.Code Ann. § 11-51-3 (1972) (an appeal may be taken from any judgment that is not "by confession"), amended 1991 Miss. Laws ch. 573, § 79. Now an appeal can be taken from any judgment other than one by default. Miss. Code Ann. § 11-51-3 (Supp.1999). The supreme court has indicated, though, that the issues on appeal from a consent judgment are akin to those under Rule 60(b). Rushing v. Rushing, 724 So.2d 911, 915 (Miss.1998). Whether in an appeal directly from the judgment or from a refusal to grant a Rule 60(b) motion, "the allegation and indicated evidence should be such as would convince a court that what is sought is not simply an opportunity to litigate that which is already settled." Id. (quoting Askew v. Askew, 699 So.2d 515, 520 (Miss. 1997)).
¶ 23. What is clear from Dr. Sanghi's arguments is that his agreement to the July 3, 1998 judgment was a condition of his release from incarceration. He disputed the amount of his past-due obligation, and upon doing so was ordered back to jail on July 2. We conclude that under these circumstances he has not relinquished the right to seek appellate review that he was never "summonsed" to the April 13 hearing at which he in absentia was found in contempt and deserving of incarceration.
¶ 24. This takes us full circle back to the question of whether Dr. Sanghi received sufficient notice of the April 13 hearing that underlies the actions at the July 2 hearing. To reiterate, Dr. Sanghi received notice of the first hearing that had been scheduled for March 9. That notice was not a summons sent by certified mail under Rule 4(c)(5), though the "motions" were sent by that procedure. Instead it was a "Notice of Court Setting" sent first class mail by the court administrator. This notice made Dr. Sanghi aware of the need to seek a postponement and presumably also to seek counsel to initiate the removal. The result of the requested delay was that the court administrator then mailed a notice on February 16, 1998, that the new hearing would be on April 13, 1998. There is nothing in the record explicitly confirming that Dr. Sanghi received the second notice, but he does state in his brief that the April 13 date was set at his request. There are several indications in the record and briefs but no direct proof that he was aware of the April 13 setting from the time that he sought a postponement of the March 9 hearing, but he just did not appear. Again, the inadequacy of the record is at the peril of the appellant Dr. Sanghi, so we proceed under the stated assumptions.
¶ 25. We have just described what was done. We now look at what should have been done. Whether the judgment is valid depends largely on the nature of the defects that occurred.
¶ 26. Rule 81(d)(3) requires that a petition or complaint be filed to modify or enforce child support and alimony judgments or to seek contempt. The mislabeling of the initiating pleading is a matter of form and would not by itself create a lack of authority for the court to act.
¶ 27. After the petition is filed, a summons is to issue notifying the respondent of the time and place for an appearance. *1256 If an answer to the petition is required, the notice should state that as well. M.R.C.P. 81(d)(4) & (5). Nothing is said about the available means of service, but the rule provides that the procedures "control to the extent that they may be in conflict with any other provision of these rules." M.R.C.P. 81(d). The implication is that where Rule 81 does not even address a necessary procedure covered in the general rules, then the general provisions apply. Since 81 does not speak to the means for service of summons, it cannot conflict with the general rules that do. Not to be overlooked, though, is that Rule 81 controls the content of the summons. Service on an out-of-state defendant cannot be completed under Rule 4 by sending a summons by regular mail. Had a return envelope to send an acknowledgment of receipt been included and then utilized by Dr. Sanghi, that would have sufficed. M.R.C.P. 4(c)(3)(A). Certified mail service on an out-of-state defendant also is adequate, if the receipt is returned. M.R.C.P. 4(c)(5).
¶ 28. The notice of the April 13 hearing was not a Rule 81(d)(5) summons, though it provided most of the relevant information. The only required information under the Rule is that a party is to be told the time and place for the hearing and that no answer is needed. M.R.C.P. 81(d)(4) & (d)(5). The sample form that sets out the summons also indicates that the case name is to be shown, the suit number, the name of the person being served, and that failure to appear may result in a judgment with monetary or other consequences; the petition that initiated the action also is to be attached. M.R.C.P. Form 1D. These forms are not mandatory, but use of them removes any question of sufficiency under the Rules. M.R.C.P. 84. The notice sent by the court administrator contained all of the information that Form 1D would have contained, except that there was no statement regarding the need for a written response nor any language commanding attendance or warning that failure to appear could have significant consequences. The same day or perhaps the day before, the three "motions" were separately sent by certified mail and received by Dr. Sanghi.
¶ 29. Whether it was for this case only or whether it is a more general approach for modifications and contempt petitions, the Eighth Chancery District in which these proceedings occurred used a court administrator notice in lieu of a Rule 81(d) summons. Rule 81 itself allows a general rule of the court to establish the time and place of hearings, including a rule that authorizes the court clerk to set matters for hearing. M.R.C.P. 81(d)(5). We read that to permit the clerk to set the date and time for hearings without the need for a chancellor's signature on an order. It is not an authorization for the chancellors of a district to bypass the summons requirement by using court administrator notice, even if there were a local rule adopted providing for that. Regardless, we find no applicable general chancery rule, local rule of the Eighth Chancery District, nor court order that even purports to authorize the practice that we are considering.
¶ 30. In fact, at least in this case the chancery court treated the petitions that were improperly captioned "motions" as if they were actually motions. Service of a motion may be by first class mail on an unrepresented party or on the attorney for a party. M.R.C.P. 5(b). This Court, through its judge who is most experienced with chancery procedures, has with some frequency reminded attorneys and judges that these matters are not brought by motion and the procedural mechanisms applicable to them. E.g., Barfield v. State, 749 So.2d 331 (Miss.App.1999) (Bridges, J.). These are to be filed as petitions or complaints. Id.; M.R.C.P. 81(d)(3). Prior to an amendment effective in 1986 these matters were properly handled as motions; perhaps what occurred in this case would at that time have been appropriate. Rule 81(d), effective January 1, 1982, Vol. 395-397 So.2d 178 (West Miss. Cas.1981); see M.R.C.P. 81, Advisory Comm. Hist. Note.
*1257 ¶ 31. Dr. Sanghi was properly served with the petition seeking contempt by certified mail and received notice of the correct hearing date and time by first class mail. That did not comply with Rule 81(d)(5). There would be no question of the chancellor's authority to proceed had Dr. Sanghi appeared other than just to contest service at the March 9 initial hearing, but that was postponed at Dr. Sanghi's request. Certainly the court also could have acted had Dr. Sanghi defended on the merits at the April 13 hearing, which was scheduled at his request. The supreme court has held that a modification hearing may be conducted, even though the proper summons under Rule 81 was not issued, if the defendant actually appears. Saddler v. Saddler, 556 So.2d 344, 345-46 (Miss.1990). There an improper default judgment was entered, but the defendant later entered an appearance and an evidentiary hearing was held on the issue of setting the default aside; sufficient evidence was introduced at that hearing to justify the modification. Id. at 345. A later opinion also held that a Rule 4 summons requiring an answer by a certain date could not substitute for a Rule 81 summons notifying the defendant of a hearing date. Powell v. Powell, 644 So.2d 269, 274 (Miss.1994). Of course, in our case the defendant not only knew of the hearing date, it was set at his request.
¶ 32. Also interpreting Rule 81 was a case in which an improper Rule 4 summons for modification proceedings was served by certified mail on an out-of-state defendant. Caples v. Caples, 686 So.2d 1071, 1074 (Miss.1996). Even so, the former husband appeared at the hearing. Three years earlier a Texas domestic relations court had entered the decree of divorce. The chancellor ordered a continuance so that the parties could seek a waiver of jurisdiction by the Texas court. Id. at 1072 & 1074. The waiver was acquired. The chancellor conducted a new hearing eight months later at which time the former husband did not appear. The supreme court held that the proper procedure before the second hearing could be held was to issue a new Rule 81 summons. Id. The rule states that if the matter is not heard on the day it is set, then an order entered on that day may continue the cause to a later date without a new summons being issued. M.R.C.P. 81(d)(5). Since the chancellor on the first hearing date did not enter an order for a later hearing, the reason stated in Rule 81(d)(5) for not issuing a new summons did not apply.
¶ 33. We also find instructive if not directly applicable certain case law that jurisdiction is not obtained by a defendant's informally becoming aware that a suit has been filed against him. Mansour v. Charmax Industries, Inc., 680 So.2d 852, 854-55 (Miss.1996). Even if a defendant is aware of a suit, the failure to comply with rules for the service of process, coupled with the failure of the defendant voluntarily to appear, prevents a judgment from being entered against him. Though Mansour involves the commencement of a suit, we find that analysis also relevant to Rule 81.
¶ 34. This raises the issue of whether Dr. Sanghi made an "appearance." The most expansive definition of "appearance" is under the rules applicable to default judgments. There, an appearance occurs when "the non-movant has manifested to the movant a clear intent to defend the suit." Dynasteel Corp. v. Aztec Industries, Inc., 611 So.2d 977, 981 (Miss.1992). The court held "formal court appearances" were not required; it cited another precedent that stated "informal contacts between parties may constitute an appearance," including seeking more time to answer. Id., (citing Journey v. Long, 585 So.2d 1268, 1272 n. 5 (Miss.1991)); see Sally Burchfield Doty, Dismissals and Judgments, in 2 JEFFREY JACKSON (ED.), MISSISSIPPI CIVIL PROCEDURE, § 15:9 at 15-10 (1999).
¶ 35. Though we find that Dr. Sanghi's contacting the court administrator to seek a later hearing date could be an *1258 appearance for default judgment purposes, it is a different matter of whether it is an appearance waiving a service of a summons under Rule 81. A defendant's appearance under default judgment analysis triggers the obligation to give that defendant three days notice prior to a hearing on the default. M.R.C.P. 55(b). For a default judgment a defendant wants to be found to have made an appearance so that notice will be given. On the other hand, merely contacting the court administrator would not be an appearance that waives defects in the service of a summons of a complaint. Lawrence J. Franck & J. Collins Wohner, Jr., Commencement of the Action, in 1 JEFFREY JACKSON (ED.), MISSISSIPPI CIVIL PROCEDURE, § 5:30 at 5-44 through 5-46 (1999).
¶ 36. We conclude that Rule 81 notice to revive a dormant action provides protections akin to those for beginning litigation. The Supreme Court has found that compliance with Rule 81 is mandatory. Powell, 644 So.2d at 274. We would read that to mean that it is mandatory unless the defendant has, as in Saddler, done something to waive his right to insist upon proper service. We find that Dr. Sanghi's contact with the court administrator to seek a more convenient time for the hearing, was not a waiver of his right to object to the absence of proper service of a summons upon him.
¶ 37. The orders that we are called upon to review in this appeal arise from the April 13 hearing to which Dr. Sanghi was never properly summonsed. What occurred in July, especially the incarceration pending the defendant's purging of his contempt, had no basis without the findings made in April. Consequently we reverse and remand for further proceedings.
¶ 38. THE JUDGMENT CHANCERY COURT IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS. COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLEE.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.