# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00697-COA

**MICHAEL EUGENE HARRISON**                                    **APPELLANT**

**v.**

**HEATHER HOWARD**                                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/25/2021 |
| TRIAL JUDGE: | HON. ROBERT GEORGE CLARK III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | MATTHEW THOMPSON |
| | CHAD KENNETH KING |
| ATTORNEY FOR APPELLEE: | JEFFREY BIRL RIMES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 02/07/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**WESTBROOKS, J., FOR THE COURT**:

¶1. Michael Harrison appeals from the chancery court's judgment holding him in contempt for his failure to abide by an agreed order of modification of child custody and support entered on March 9, 2018. After thoroughly reviewing the record, we affirm the chancery court's ruling.

## FACTS AND PROCEDURAL HISTORY

¶2. Michael and Heather married on October 10, 1998, in Hinds County, Mississippi. Fraternal twins (one boy and one girl) were born of this marriage in 2001. In March 2009, Heather reconnected with Jason Howard, a man from her past, through social media. The newly established relationship resulted in Michael and Heather's divorce because Heather

began a physical and sexual relationship with Jason in September 2009. Once Michael discovered Heather's adultery, Heather abruptly decided to move out of the marital home. She found a residence of her own and then allowed Jason to live with her there.

## I. Divorce Proceedings

¶3. On November 12, 2009, Michael filed a complaint for divorce on the ground of uncondoned adultery and served Heather with a summons on the same day. Michael claimed that since the start of her affair, Heather had no longer been an attentive mother because she focused all her attention on Jason. Michael requested that their minor children be placed in his custody, with Heather paying him child support, and an equitable division of the marital property. Heather answered and counterclaimed, requesting child custody, child support, alimony, equitable division of marital assets, and attorney's fees. Depositions were taken, and a divorce hearing was held on January 18, 2012.

¶4. On May 17, 2012, the chancery court entered the "Final Judgment of Divorce" which contained some of the following stipulated provisions:

a. Heather's share of Highland Building Services shall be two Thousand, Five Hundred Dollars ($2,500.00). Heather shall have no other interest in said business henceforth and forever more.

b. Heather shall be entitled to Three [Thousand], Three Hundred and Eighty Dollars ($3,380.00) as her portion of the equity in the marital home [and] be paid at the time of closing on the sale of said property.

c. Michael shall make reasonable diligent efforts to refinance said marital home and remove Heather's name from the mortgage. Michael shall make inquiries to three different lenders within sixty (60) days following the entry of the Final Judgment of Divorce, followed by one per year from that initial inquiry date for the following three (3) years, for a total of four (4) inquiries made in three (3) and two months.

2

Michael will provide reasonable proof of said refinance efforts.

d.    Should Michael be unable to refinance said home after the initial year after the entry of the Final Judgment of Divorce, interest shall accrue in favor of Heather at the amount of 8% on the $3,380 which is her interest in the marital home.

e.    Should Michael not make a mortgage payment within (30) days of it being due, so that his and/or Heather's credit reflect said nonpayment, this trigger[s] placing the home on the market with a reputable real estate [agent]/broker to be sold at fair market value.

. . . .

g.    Michael shall be entitled to use, possession, and control of the marital home and shall be responsible for the mortgage, insurance, taxes, and upkeep of same. Upon closing on the marital home, Michael shall be entitled to exclusive ownership of the home, and Heather shall quitclaim same to Michael at the time she is released from the mortgage.

¶5.    The Final Judgment of Divorce granted Michael sole physical custody of the twins, with Heather having visitation rights. The chancery court also ordered that Heather pay twenty percent of her monthly adjusted gross income, totaling $866, to Michael for child support. The chancery court provided that Michael shall have exclusive use, possession, and ownership of the marital home and be "solely responsible for the mortgage, taxes, and insurance." Both parties were to continue to hold a $400,000.00 life insurance policy that named the children as beneficiaries.

¶6.    On August 31, 2012, Heather and Michael submitted the below "Stipulation and Partial Property Settlement Agreement" (Property Settlement Agreement) for the court to amend the Final Judgment of Divorce by adding these terms:[1]

---

[1] The bracketed words signify handwritten text by the parties.

The parties agree that Mike has an agreement with Chase Mortgage, and Mike shall continue to pay timely his present amount with Chase Mortgage through the month of November 2012, when the agreement shall be satisfied, and the stipulations incorporated in the Final Judgment of Divorce shall continue to govern [Mike's mortgage payments]. . . .

That the parties further agree that the correct child support amount . . . should be reduced to $693.00 per month. The parties agree that the coverage in payments for the months of June, July, and August, 2012, shall be credited back to Heather, so that for the month of September 2012, Heather's child support payment shall be $174, which shall be paid on September 1, 2012. Beginning October, 2012, and for each month thereafter, Heather's child support payment shall be $693 per month.

That Mike owes unto Heather the amount of $2,500 for her share of Mike's business, and that parties request this Honorable Court to determine the time in which said amount must be paid to Heather by Mike. . . .

The parties further stipulate and agree that Heather owes taxes per the Final Judgment of Divorce, and the [Plaintiff] request[s] this Honorable Court to provide the timeline for Heather's payment of same.

According to the terms of the Property Settlement Agreement, Michael owed Heather (1) $3,380 for the equity of the marital home and if he does not sell the home an annual interest of eight percent and (2) $2,500 for the share of the business. On September 4, 2013, the chancery court granted Michael's motion to amend and added the above provisions to the Final Judgment of Divorce. Neither party contested the court's additions.

## II.     Modification Proceedings

### A.     Motion for Modification

¶7.     Two-and-a-half weeks later, Heather moved for modification of the Property Settlement Agreement (which included the terms of the original Final Judgment of Divorce). In October 2013, the chancellor set a modification hearing for April 16, 2014. On June 9,

4

2014, Michael's counsel entered a notice of appearance on his behalf. But after years without any activity in the case, the court clerk entered a motion to dismiss the case for lack of prosecution. On December 9, 2015, the chancery court dismissed the case without prejudice.

### B. Complaint for Contempt and Petition for Modification of Custody and Other Relief

¶8. On December 15, 2016, Heather filed a combined complaint for contempt and petition for modification of the Property Settlement Agreement against Michael. A new chancery judge set a hearing for April 12, 2017, and a Rule 81 summons was issued to Michael, notifying him of the April hearing. M.R.C.P. 81. On April 7, 2017, Michael, representing himself, filed an answer to Heather's complaint while also counterclaiming against Heather for her failure to pay child support since 2014 in accordance with the Property Settlement Agreement. Days later, Heather moved to continue the hearing. The hearing was held on November 8, 2017, and both Michael and Heather were present. Michael appeared before the chancery court without an attorney. During the hearing, Michael and Heather submitted a memorandum to the chancery court. The memorandum was an agreement between Michael and Heather modifying the Property Settlement Agreement and the following exchange occurred:

COURT: Prior to coming into court, the Court conferred with counsel for Ms. Howard and Mr. Harrison, who is acting pro se. From what I understand, the parties have reached an agreement as to all of the matter presently before the Court.

PRIESTER: Yes, your Honor.

5

COURT:          And, in fact, that agreement has been reduced to a memorandum.

COURT:          That has been executed by both parties.

PRIESTER:       Yes, your Honor.

COURT:          And we went over that in chambers and from what I understand, Mr. Harrison, this is an agreement that you have made with Ms. Howard regarding the resolution of both your petition – because you filed a counter-petition.

MICHAEL:        Correct.

COURT:          But it resolves all issues presently before the Court?

MICHAEL:        Yes, your Honor.

COURT:          And this is your agreement?

MICHAEL:        Yes, your Honor.

COURT:          And you have gone through it, you understand it, and you come to that resolution with your ex-wife and counsel?

MICHAEL:        Yes, sir.

COURT:          All right. Ms. Howard, you have gone through this with your counsel regarding the terms as you have agreed to resolve all matters before the Court?

HEATHER:        Yes, sir.

COURT:          And this is your agreement?

HEATHER:        Yes, sir.

COURT:          Both of you understand that this will be reduced to a court order, which will be presented to the Court and entered as the order of this Court. Do you understand that?

| | |
|---|---|
| HEATHER: | Yes, sir. |
| MICHAEL: | Yes, sir. |
| COURT: | For purposes of the record, the Court will admit as Exhibit 1 to this matter on today the agreed - - the agreement of the parties that have actually been executed by both of the parties. |

¶9.     Michael and Heather each stated at the hearing that all issues were resolved. Michael and Heather both signed the memorandum and dated their signatures as "11/8/17"—the same day as the hearing. Both Michael and Heather understood that the memorandum would be entered by the chancery court as an agreed order.

### III.     Events after the November 2017 Hearing

¶10.    On December 20, 2017, Michael sent Heather an email, stating that he would like to "reconcile the expenses." Heather's counsel sent the children's expenses to Michael.

¶11.    On January 16, 2018, Michael emailed Heather's counsel stating, "I'm just trying to make sure the math is correct." He said, "I'm happy to sign the custody modification parts of the agreement, so if you want to separate that out while we come to agreement on money that is fine." Heather's counsel emailed Michael stating, "I have sent the document . . . as you requested and I have sent you everything that you requested and this delay is unreasonable." Additionally, Heather's counsel stated that Heather agreed to the memorandum "with the understanding that this matter was resolved, if it is not then, we will have to see how the Court will handle this matter."

¶12.    On January 23, 2018, Michael sent Heather and her counsel another email stating that he came "up with a total of $9,678.74 as opposed to the proposed [agreed order] that shows

7

the total at $10,275.75." On March 1, 2018, Heather's counsel sent Michael an email attaching the proposed "Agreed Order Modifying Child Custody and Support" and informing them of a scheduled hearing before the chancery court "to have him sign off on it." On March 7, 2018, Michael stated, "*I have no problems with the agreement in substance and I have been making payments to Heather since the last court date. But I had questions regarding the math used to arrive at the total owed.*" (Emphasis added).

¶13. On March 9, 2018, the chancellor entered an "Agreed Order" duplicating the memorandum. In addition, the chancellor included the following terms in accordance with provision eleven of the parties' memorandum, which stated that the "Final Order of the Court will contain the financial expenses which are to be exchanged between them":

9.     The expenses submitted by Michael Harrison total $3,241.85 (note $3,871.85 was originally submitted by MH which contained $630.00 of cell phone charges during the period that Heather Howard Harrison was paying child support from 9/2012 through 12/2013 so his expense request was adjusted to remove the $630.00 in cell phone charges as inappropriate for that time period.)

10.     The expenses submitted by Heather Howard (Harrison) total $23,793.34 from May 2016 through November 2017.

11.     The overall balance of expenses after offset is $20,551.49 of which half is due and owing to Heather Howard (Harrison) from Michael Harrison in the amount of $10,275.75.

12.     That Michael Harrison shall pay $100.00 per month beginning December 1, 2017 on the balance of $10,275.75 with statutory interest of [eight percent] until June 1, 2018 at which time the amount will increase to $300 per month for the next six months. Beginning January 1, 2019, Michael Harrison will pay $500 a month until the arrearage and interest is paid in full. All said amounts shall be non-dischargeable in Bankruptcy as child support.

Heather signed the Agreed Order, but Michael did not. Neither Heather's attorney nor any attorney on behalf of Michael signed the Agreed Order.

### IV.     Events after the Entry of the Agreed Order

¶14.    After the chancery court entered the Agreed Order, Michael did not object to or challenge the validity of the Agreed Order. Michael did not move to set aside the judgment under Mississippi Rule of Civil Procedure 55 or move to alter or amend the judgment under Mississippi Rule of Civil Procedure 59(e). Nor did Michael file an appeal challenging the Agreed Order. Instead, Michael began making payments in accordance with the Agreed Order. Michael made cash payments in April 2018 and May 2018. Based on the record, Michael began sending money orders, which were first received by Heather in June 2018 until November 2018.

### V.     Contempt Proceedings

¶15.    On February 20, 2019, Heather filed a petition for contempt against Michael. The chancery court issued an order setting a hearing for March 20, 2019. Heather issued a Rule 81 summons to Michael on February 21, 2019, and it was returned executed on February 26, 2019. On March 8, 2019, Michael responded to the petition for contempt and in the same pleading counterclaimed for citation of contempt against Heather. The hearing was held on March 20, 2019.

¶16.    During the hearing, the chancery court first allowed the parties to address whether the Agreed Order was valid because Michael raised this issue for the first time in his responsive pleading to Heather's petition for contempt. The chancery court first read aloud the modified

9

agreement submitted to the court on November 8, 2017, paragraph by paragraph. Michael then stated that prior to the filing of the Agreed Order, he conveyed to Heather through email that he objected to a "financial portion of that agreement." Michael also stated that when the chancery court entered the Agreed Order "without [his] agreement," he felt that his objections were ignored and that the agreement would not be valid. Michael testified during the contempt hearing:

> It was filed at that time and my thinking is, something filed without my agreement - - I think, an agreed order filed without my agreement would not end up being valid. I did not know to challenge it, didn't have access to - - you know, I'm not a lawyer. I didn't have - -

The chancellor then asked Michael to produce the emails of his exchange with Heather's attorney. Michael presented the emails to the chancery court. Based on the emails the chancery court concluded that the discrepancy at issue in the emails submitted to the court is provision eight of the modified agreement, which instructed "the parties to exchange and calculate within the 10-day period." The chancery court also acknowledged that provision eight of the modified agreement explained the need for the parties "to look at some finances and come up with an exact amount."

¶17. The chancery court also stated that the emails show that at least until March 2018, Michael disagreed with Heather about the amount owed. Michael testified that there was disagreement because he believed he did not owe Heather for expenses, like, the grocery bill during months when the children should have been with him. He testified that he paid the expenses in full from March 2018-September 2018. He sent an email to Heather on August 7, 2018, stating, "As for me I will continue to contribute what I think is appropriate and

10

reasonable." According to the chancery court, on March 1, 2018, "there is an indication that the - - if the order was not returned, that the matter would be presented to the Court - - to the judge at that time." At this time, Michael was notified both that the Agreed Order "presented to him would be entered," and that the exhibit submitted "set in place a payment plan."

¶18.    The chancery court ultimately concluded that the emails indicated that "we are talking about a difference of $597.01." Therefore, finding the $597.01 to be the only issue with the validity of the Agreed Order, the chancery court set that issue aside and then moved forward with Heather's complaint for contempt against Michael.

¶19.    Michael testified that he was self-employed and that his monthly income was between approximately $3,500 and $4,200. His income was flexible because he worked hourly as an independent contractor and was on commission with a radio station. He admitted that Heather sent him a monthly list of expenses requesting payment. While Michael pled that his failure to pay was one of inability and not willful, in court he testified to the contrary. He conceded to having the money to pay Heather.

¶20.    Michael further testified that he may have received a letter from Heather stating that he owed $9,475.80 for his portion of the children's expenses. However, Michael admitted that he stopped making payments in December 2018:

> I have had enough. I have been writing checks. I got documentation of money that I have paid. I said, I'm not paying anymore money until I have a relationship with my children, until I see my children.

Michael stated that because the monthly expenses varied, "[s]ometimes [he] just kind of gave her what she asked and sometimes [he] [did not]."

11

¶21. On May 25, 2021, the chancery court ordered that Michael be held in contempt for his failure to abide by the provisions in the modified agreed order.[2] Specifically, the chancery court stated that Heather proved by clear and convincing evidence that Michael was in arrears of (1) $1,100 toward his $3,380 debt, (2) $3,100 toward his $10,275.75 childcare expenses prior to March 2018, and (3) $8,580.45 of his one-half portion of the twins' expenses between March 2018 and February 2019. The chancery court's contempt order observed that there was a $597.20 (instead of $597.01) discrepancy between the expense reports and, therefore, reduced the amount owed by subtracting $597.20 from $9,177.65, the total amount of children's expenses between March 2018 and February 2019. The chancery court ordered Michael's incarceration in the Madison County jail until he paid all debts owed. The chancery court further ordered Michael to pay the $3,380 with eight-percent interest, the $3,100 with eight-percent interest, the $8,580.45, and $3,021.30 in attorney's fees within thirty days of entry of the order. Michael appeals the chancery court's ruling, asserting that the contempt order was void for lack of personal jurisdiction due to defective process and for it being based upon an invalid Agreed Order. Michael asserts that the Agreed Order was invalid because he did not sign it and because he did not agree with terms five, eight, nine, eleven, and twelve of the Agreed Order. Michael further asserts that term two of the Agreed Order retroactively terminated child support and was also void. Given that

_____

[2] This Court's docket text shows that after the contempt hearing, the chancery court clerk moved to dismiss the case for lack of prosecution on August 21, 2020. On September 2, 2020, the chancery court dismissed the motion. On April 23, 2021, Heather's attorney moved for a telephonic status conference. Afterward, the chancery court ruled on Heather's petition for contempt against Michael.

Michael has waived the jurisdictional issue and that his other issues are procedurally barred, we affirm the chancery court's contempt order.

**DISCUSSION**

I.     **Michael waived the issue of improper service of process.**

¶22.     Michael argues that the Agreed Order entered on March 9, 2018, was void because he was not provided proper notice of the November 2017 modification hearing in accordance with the Mississippi Rule of Civil Procedure 81. Michael also briefly asserts that he was never properly served for the March 2018 hearing as well and, therefore, the chancery court did not have personal jurisdiction over him for either hearing. "This Court uses a de novo standard when reviewing questions concerning jurisdiction." *Pearson v. Browning*, 106 So. 3d 845, 847 (¶6) (Miss. Ct. App. 2012) (quoting *Sanghi v. Sanghi*, 759 So. 2d 1250, 1252 (¶7) (Miss. Ct. App. 2000)).

¶23.     A judgment is void if "the court rendering it lacked jurisdiction" or "acted in a manner inconsistent with due process." *Richard v. Garma-Fernandez*, 121 So. 3d 929, 933 (¶19) (Miss. Ct. App. 2013); *Clark v. Clark*, 43 So. 3d 496, 501 (¶21) (Miss. Ct. App. 2010); *Overby v. Murray*, 569 So. 2d 303, 306 (Miss. 1990). "For a judgment to be valid, the court must have personal jurisdiction over the parties to the action." *Richard*, 121 So. 3d at 933 (¶20). "Personal jurisdiction depends on the presence of reasonable notice to the defendant and a sufficient connection between the defendant and the forum." *Morrison v. Miss. Dep't of Hum. Servs.*, 863 So. 2d 948, 954 (¶17) (Miss. 2004). "A court obtains personal jurisdiction over a defendant in one of two ways. Personal jurisdiction is established when

13

a defendant is properly served the summons and complaint under Rule 4 of the Mississippi Rule of Civil Procedure [or] . . . when a defendant voluntarily enters an appearance." *Id*. at (¶21).

¶24. Since this is a matter regarding contempt and "modification or enforcement of custody, support, and alimony judgments[,]'" M.R.C.P. 81(d)(2), whether Michael was properly served "is governed by Mississippi Rule of Civil Procedure 81 . . . ." *Pearson*, 106 So. 3d at 847-48 (¶7); *Morrison*, 863 So. 2d at 950 (¶7). Mississippi Rule of Civil Procedure 81(d)(5) states:

> [S]ummons shall issue commanding the defendant or respondent to appear and defend at a time and place, either in term time or vacation, at which the same shall be heard. Said time and place shall be set by special order, general order or rule of the court. If such action or matter is not heard on the day set for hearing, *it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent*. The court may by order or rule authorize its clerk to set such actions or matters for original hearing and to continue the same for hearing on a later date.

M.R.C.P. 81(d)(5) (emphasis added).

¶25. A Rule 81 summons assists in providing a party due process because it "sets a time and place for a hearing in court concerning the matters set out in the complaint." *Powell v. Powell*, 644 So. 2d 269, 273 (Miss. 1994); *accord Vincent v. Griffin*, 872 So. 2d 676, 678 (¶6) (Miss. 2004) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."). Hence, the issuance of a Rule 81 summons is mandatory. *Sanghi* , 759 So. 2d at 1258 (¶36) (citing *Powell*, 644 So. 2d at 274). An opposing party's failure to issue a Rule 81 summons may result in the chancery court losing its personal jurisdiction. *Pearson*, 106 So. 3d at 852 (¶39).

14

¶26. However, our appellate courts have consistently held that a party may waive the issue of improper service by appearing before the court at the designated time and failing to object. *Pearson*, 106 So. 3d at 852 (¶39); *Curry v. Frazier*, 119 So. 3d 362, 365 (¶11) (Miss. Ct. App. 2013) ("All parties were present and waived all objections to defective process by their appearance."); *Richard*, 121 So. 3d at 933 (¶21) ("Personal jurisdiction is also established when a defendant voluntarily enters an appearance. One waives process and service upon making a general appearance." (citation omitted)); *Britt v. Orrison*, 323 So. 3d 1135, 1148 (¶47) (Miss. Ct. App. 2021) ("[S]ervice of process is waived when there is a failure to raise an objection."). Appearance in this context means that the party manifested "a clear intent to defend the suit." *Sanghi*, 759 So. 2d at 1257 (¶34). This intent is sometimes exemplified by the "informal contacts" made between parties. *Id*.

¶27. In *Chasez v. Chasez*, 957 So. 2d 1031, 1037 (¶15) (Miss. Ct. App. 2007), the pro se defendant Frederick Chasez appeared at the hearing and made "no objection to lack of notice" after the chancellor asked if there were any issues that needed to be discussed. The *Chasez* court determined that Frederick waived the issue when he "appeared and indicated his willingness to proceed." *Id*. at 1033, 1037 (¶¶2, 15).

¶28. We also held in *Britt* that the chancery court should have heard Britt's motion for contempt on the merits, despite the improper service, because the defendant Orrison "waived any service of process defects" when Orrison's counsel appeared in court, stated that Orrison was ready to proceed, and failed to raise the issue of improper service. *Britt*, 323 So. 3d at 1148 (¶48).

15

¶29. Whereas, in *Pearson*, we held that the defendant Dennis Pearson did not waive the improper service issue when he was present before the court *but* "protested his lack of notice." *Pearson*, 106 So. 3d at 851-52 (¶¶33, 38). We stated that unlike the defendant in *Dennis v. Dennis*, 824 So. 2d 604, 611 (¶18) (Miss. 2002), who "announced ready at the beginning of the hearing, defended the allegations against him, and even subpoenaed witnesses to rebut the allegation[,]" Pearson "continually objected" and declared that had he been properly notified, he would have appeared with counsel. *Id*. at 851 (¶¶30, 33).

### A.    November 8, 2017 Hearing

¶30. In the case here, Heather filed a "Complaint for Contempt and Modification of Custody and Other Relief" against Michael on December 15, 2016. On February 27, 2017, Michael was personally served with a copy of the complaint and a summons. The Rule 81 summons notified Michael of the hearing and that it was set for April 12, 2017. On April 7, 2017, Michael answered Heather's complaint and brought a counterclaim against Heather for child support, requesting the chancery court to "enter an order directing Heather to immediately pay Michael past due child support." On April 11, 2017, Heather moved to continue the hearing from April 12, 2017, to a later date. The hearing for modification of custody was held on November 8, 2017. Absent from the record is any order by the chancery court granting Heather's continuance or any notice to the parties that the hearing had been rescheduled, which suggests that Michael was not properly notified of the change of the hearing's date. However, as explained further below, we conclude that despite the alleged lack of notice, Michael's due process rights were not violated, and in any event, he waived

16

the issue of improper service.

¶31.   Michael appeared before the court on November 8, 2017. When the chancery court asked if the memorandum resolved all the issues before the court, Michael answered in the affirmative. At this time, Michael did not raise an objection to the service of process. Therefore, in accordance with *Britt*, Michael waived the issue of improper service of process. *See Britt*, 323 So. 3d at 1148 (¶48). Furthermore, much like the defendant in *Chasez*, Michael announced to the court that all his issues had been resolved.

### B.   March 20, 2019 Hearing[3]

¶32.   For the same reason, Michael's argument that the chancery court lacked personal jurisdiction over him during the March 20, 2019 contempt hearing lacks merit. Michael consented to the chancery court's jurisdiction when he filed a counter-claim on April 7, 2017, and when he appeared in court to defend the contempt proceedings on March 20, 2019. Similarly to the pro se defendant in *Chasez* but unlike the plaintiff in *Pearson*, Michael did not raise the lack-of-service issue before the chancellor. Michael also had a full opportunity to defend himself and be heard. Michael clearly indicated a willingness to proceed by asking Heather questions while acting as a pro se litigant; he testified from the witness stand; orally moved and argued motions before the trial court; and the chancellor allowed him to engage in surrebuttal. Michael appeared and manifested a clear intent to defend the suit.

¶33.   Under these circumstances, we conclude that Michael's actions showed that he waived

---

[3] Michael states in his brief, "Harrison was never properly summoned to the November 2017 event/hearing, nor the March 2018 hearing." This statement is not accurate. The record reflects a March 20, 2019 hearing, and we will address the chancery court's personal jurisdiction over Michael relative to that hearing.

17

his right to object to insufficient service and consented to the court's exercise of personal jurisdiction over him at both hearings. Accordingly, the chancery court had personal jurisdiction over Michael when it entered the Agreed Order. Based on the record, Michael was notified that the hearings would take place, and when he appeared before the court on both dates, he failed to object. Michael waived any issue he had with Rule 81 and was afforded due process.

## II. Michael's remaining issues are procedurally barred.

### A. Validity of the March 9, 2018 Agreed Order

¶34. A year after the entry of the Agreed Order, on March 8, 2019, Michael pled that the order was an "invalid agreement" entered into without his consent. During the contempt hearing on March 20, 2019, Michael made an oral motion pursuant to Mississippi Rule of Civil Procedure 60(b)(4), asserting that the Agreed Order was void because he did not consent to the Agreed Order or receive a copy of it. The chancery court found that the Agreed Order was valid but noted "that there was a difference of $597.20 in the amount that both parties indicated was owed on the arrearage." As a result, the chancery court denied Michael's motion. The chancery court ruled that the provision of the Agreed Order that was subject to disagreement as to the amount of children's expenses that were owed (the $597.20), could be taken into consideration, but as to the remaining provisions of the judgment, the Court would hold that the order was valid. After the hearing, the chancery court entered its "Findings of Fact, Conclusions of Law, and Judgment."

¶35. Again, Michael argues that the Agreed Order was void because of (1) his lack of

18

signature and (2) his disagreement with the terms. Under Mississippi Rule of Civil Procedure Rule 60(b)(4), "the court may relieve a party or his legal representative from a final judgment, order or proceeding [if] . . . the judgment is void." M.R.C.P. 60(b)(4). Additionally, an objection to a void judgment may be raised at any time. *O'Neal v. O'Neal*, 17 So. 3d 572, 575 (¶14) (Miss. 2009) ("There can be no time limitation for relief from a void judgment as 'no amount of time or delay may cure a void judgment.'" (quoting *Kirk v. Pope*, 973 So. 2d 981, 988 (Miss. 2007))). As discussed below, we find that the Agreed Order is voidable, not void. This changes the complexion of how the order is treated under Rule 60(b)(4). We also conclude that Michael's lack of signature or disagreement with its terms were waived. We further find that because Michael failed to timely appeal the Agreed Order, his attack on the validity of the Agreed Order is procedurally barred.

¶36. Mississippi Rule of Civil Procedure Rule 60(b)(4) applies to agreed orders as final judgments. "[A] final, appealable judgment [is] one that adjudicates the merits of the controversy which settles all issues as to all the parties and requires no further action by the lower court." *Boone v. Boone*, 80 So. 3d 150, 157 (¶23) (Miss. Ct. App. 2012) (internal quotation marks omitted). Our Supreme Court has held that an agreed order is "a judgment of the issuing court, subject to the court's enforcement powers." *McNeese v. McNeese*, 129 So. 3d 125, 130 (¶13) (Miss. 2013) (quoting *Riley v. Wiggins*, 908 So. 2d 893, 899 (¶15) (Miss. Ct. App. 2005)). Moreover, "it is 'given the same force and effect as judgments rendered after litigation.'" *Id.* (quoting *Guthrie v. Guthrie*, 233 Miss. 550, 102 So. 2d 381, 383 (1958)). Furthermore, "[a] consent decree, although founded on the agreement of the

19

parties, is a judgment . . . . It thus has greater finality than a compact." *Riley*, 908 So. 2d at 899 (¶15).

¶37. With the understanding that an agreed order is in fact a final judgment, Michael's collateral attack on the Agreed Order at hand is only permissible if this Court determines that the Agreed Order is void. *See Moore v. Love*, 2 Miss. Dec. 724, 731 (1882) ("A void judgment is a nullity and could not be amended. If it is voidable merely, it cannot be attacked collaterally.").

¶38. "An agreed order, or consent judgment, is essentially a contract . . . ." *McNeese v*, 129 So. 3d at 130 (¶13); *accord Riley*, 908 So. 2d at 899 (¶15) ("[A]n agreed order or consent decree is in the nature of a contract."). Hence, an agreed order is treated as if it is a contract. *Guthrie*, 102 So. 2d at 383 ("Also, being in the nature of a contract, a consent judgment should be construed as a written contract."). Under general contract principles, "[a] 'void' contract is one that is illegal ab initio as a matter of law, whereas a 'voidable' contract is one that is later set aside due to some external factor." *Home Base Litter Control LLC v. Claiborne County*, 183 So. 3d 94, 101 (¶22) (Miss. Ct. App. 2015).

¶39. The actions of the chancery court support the conclusion that the Agreed Order was voidable. *See id.* ("A voidable contract can be revived, but a void contract cannot."). Given that the Agreed Order was voidable but not void, Michael cannot now, on appeal regarding the contempt proceedings, attack the validity of the Agreed Order. *See Burgess v. Williamson*, 270 So. 3d 1031, 1037 (¶20) (Miss. Ct. App. 2018) ("[I]ssues that should have been brought on direct appeal of a divorce judgment cannot be re-litigated in a subsequent

20

contempt proceeding." (internal quotation marks omitted)). Michael had every opportunity to challenge the entered Agreed Order but failed to do so. Michael could have, within ten days of its entry (March 9, 2018), filed a motion to alter or amend a judgment under Rule 59(e). M.R.C.P. 59(e). If Michael missed the ten-day deadline, then Michael could have filed a direct appeal within thirty days of the entry of the Agreed Order. M.R.A.P. 4(a) ("The notice of appeal . . . shall be filed with the clerk of the trial court within 30 days after the date of entry of judgment or order appealed from."). Rather than challenge the order entering the Agreed Order, Michael exemplified his acquiescence by making payments in accordance with the Agreed Order the month that it was entered. Michael only now attacks the validity of the Agreed Order after counterclaiming against Heather for not abiding by the terms of the Agreed Order and feeling as though he was alienated from his children. Thus, we conclude that Michael waived his right to appeal the voidable Agreed Order.

¶40. Notwithstanding, we address Michael's allegation that the Agreed Order is void due to his lack of signature, which has been dealt with previously by this Court in *McDonald v. McDonald*, 850 So. 2d 1182, 1189 (¶25) (Miss. Ct. App. 2002). In *McDonald*, the chancery court entered the agreed order without Mr. McDonald's signature. *Id*. at 1188 (¶22). The *McDonald* court did not render the agreed order void but held that when there is a "recital of the terms of the settlement into the record, followed by an agreement to end the hearing," the parties have expressed an intent to be bound. *Id*. at (¶25). Here, Michael submitted the terms of the memorandum that was codified into the Agreed Order by the chancery court. Additionally, Michael's appearance at the March 2019 hearing, at which he contested the

21

disputed terms of the order until the hearing concluded with his consent, exemplified his intent to be bound by the Court's ruling making his subsequent argument moot.

¶41. We next address Michael's assertion that he did not agree with the terms of the Agreed Order. This issue is not supported by the record. At the November 8, 2017 hearing, Michael told the chancery judge that there were no other issues for the court to resolve. After the chancery court entered the Agreed Order on March 9, 2018, Michael did not alert the chancery court to any disagreements or oppositions to the Agreed Order. Michael did not alert the chancery court to any concerns with the Agreed Order until he responded to Heather's complaint for contempt.

¶42. The chancery court addressed the alleged discrepancy during the March 20, 2019 contempt hearing and concluded that the disagreement rested on a difference of $597.20 (voiding or setting aside the previous provision in the Agreed Order). The chancery court corrected the error by reducing Michael's amount owed by $597.20. The discrepancy in the amount owed is a factual determination and not a matter of law. Again, Michael was given an opportunity to defend himself and cross-examine Heather and address the court. Based on these facts, we find that any contention by Michael that the Agreed Order was void is now moot as Michael conceded that there were no other issues to resolve.

¶43. In conclusion, we hold that because the Agreed Order was voidable but not void, Mississippi Rule of Civil Procedure 60(b)(4) is inapplicable. Therefore, Michael's appeal is untimely and his failure to appeal the voidable order created a procedural bar. Any argument regarding the Agreed Order's lack of signature or Michael's disagreement with

its terms is hereby waived.

### B. Termination of Child Support

¶44.    As a final argument, Michael states that the chancery court committed error by retroactively terminating Heather's child support obligations.  The memorandum signed by Michael and Heather granted the parties joint physical and legal custody of the children.  The memorandum also stated that Heather was no longer obligated to pay child support.  Michael did not object to Heather's termination of child support during the November 8, 2017 hearing, or anytime thereafter.

¶45.    "It is well settled that issues not raised below may not be raised on appeal." *Austin v. State*, 971 So. 2d 1286, 1288 (¶8) (Miss. Ct. App. 2008).  "Before an issue may be assigned and argued in this Court, it must first be presented to the trial court."  *Williams v. Dep't of Hum. Servs.*, 116 So. 3d 176, 181 (¶12) (Miss. Ct. App. 2013) (citing *Wilburn v. Wilburn*, 991 So. 2d 1185, 1191 (¶14) (Miss. 2008)).  This is due in part because "[w]e cannot find that the chancellor erred" when the issue "was never properly before the chancellor." *Kelley v. Day*, 965 So. 2d 749, 755 (¶12) (Miss. Ct. App. 2007).  Michael never raised the issue that the chancery court erred by retroactively terminating Heather's child support.  Therefore, this issue is not properly before this Court and is procedurally barred.

### CONCLUSION

¶46.    For the reasons stated above, we affirm the chancellor's Findings of Fact, Conclusion of Law, and Judgment finding Michael Harrison in contempt.

¶47.    **AFFIRMED.**

23

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. WILSON, P.J., McCARTY AND EMFINGER, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**